LOCAL 526-M, MICHIGAN CORRECTIONS ORGANIZATION, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, CLC v CIVIL SERVICE COMMISSION

Docket No. 51165. Submitted June 3, 1981, at Lansing.—Decided October 20, 1981.

Certain employees of the Department of Corrections and their exclusive bargaining representative brought an action against the department and the Civil Service Commission and certain respective management personnel, challenging selection procedures for transfer or promotion used by the defendants which gave special consideration to some candidates solely on the basis of race or sex. The plaintiffs sought and were granted an injunction restraining the defendants from utilizing the procedures and subsequently moved for summary judgment, which motion was granted, Ingham Circuit Court, Robert Holmes Bell, J. The defendants appeal. *Held:*

The trial court erred in granting the plaintiff's motion. Race and sex are factors which may be used by an employer in designing a plan of affirmative action to eliminate the effects of past discrimination or the discriminatory effects of a present method of employee selection or promotion. The record reveals that the policies utilized by the defendants are facially constitutional.

Reversed and remanded.

1. Civil Service — Affirmative Action — Constitutional Law — Statutes.

Voluntary affirmative action policies to eliminate the effects of past discrimination in the hiring of employees may be allowed in the public as well as the private sector, and such action, of itself, is not violative of the Civil Rights Act of 1964 or the United States or Michigan Constitutions.

References for Points in Headnotes

[1, 3] 15 Am Jur 2d, Civil Rights §§ 95, 105.

[2] 5 Am Jur 2d, Appeal and Error § 873.

16 Am Jur 2d, Constitutional Law §§ 93, 128.

2. Constitutional Law — Judicial Construction — Appeal.

    The Court of Appeals in construing constitutional language will look to the circumstances and purpose underlying its adoption.

3. Master and Servant — Affirmative Action.

    Race and sex are factors which may be used by an employer in designing a plan of affirmative action to eliminate the effects of past discrimination and the discriminatory effects in a present selection plan.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *Eileen Nowikowski),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Varda N. Fink,* Assistant Attorney General, for defendants.

Amici Curiae:

*Robert A. Sedler,* Cooperating Attorney, Wayne State University Law School, for American Civil Liberties Union Fund of Michigan.

*Robert E. Katz,* for certain Michigan legislators.

*Walter S. Nussbaum, P.C.,* for Michigan Society of State Engineers and Professional Affiliates.

*Theodore Sachs,* General Counsel, Michigan State AFL-CIO, for Michigan State AFL-CIO.

*John W. Davis, Jack Greenberg, James M. Nabritt, III, O. Peter Sherwood,* and *Napoleon B. Williams, Jr.,* for Lansing Branch, NAACP.

*Jill M. Kopec,* for Women in State Government.

Before: Beasley, P.J., and M. J. Kelly and N. A. Baguley,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Beasley, P.J. Defendants the State Civil Service Commission and the State Department of Corrections appeal from the grant of an injunction restraining them from utilizing certain affirmative action procedures in promoting and transferring employees. Plaintiffs are employees of the Michigan State Department of Corrections and their exclusive bargaining representative, Local 526-M, Michigan Corrections Organization, Service Employees International Union, AFL-CIO, CLC.

In their complaint, plaintiffs claimed that certain promotions or transfers of fellow employees within the Department of Corrections were made for affirmative action purposes and were in violation of Article 11, § 5, of the 1963 Michigan Constitution. The two specific policies of the civil service complained of were the expanded certification policy and the rescheduled examination policy, subpart 4.

Plaintiffs sought and were granted an injunction to restrain defendant Department of Corrections from utilizing either of the challenged procedures in making selections for transfers or promotions.

The trial court granted plaintiffs' motion for summary judgment, holding that the two policies violated the Michigan Constitution by giving special consideration to some candidates for positions *solely* on the basis of their race or sex. Defendants appeal as of right. Various organizations sought, and were granted, leave to file amicus curiae briefs.

Civil Service Commission Rule 1.1 parallels the requirement of Article 11, § 5, of the 1963 Michigan Constitution that all appointments and promotions to positions in the state civil service be made on the basis of merit, efficiency, and fitness. Rule 1.2a goes on to provide:

"Equal Opportunity.—In order to assure equal employment opportunity based exclusively upon merit, efficiency and fitness, the state personnel director may recommend to the Civil Service Commission, as an alternative to current means of evaluating applicants, methods for selection of persons qualified for state employment or for promotional opportunity which are designed to eliminate any discrimination based upon sex, age, physical handicap, race, national origin, religion or political partisanship, and which eliminate all irrelevant factors for evaluation of applicants."

The affirmative action procedures of which plaintiffs complain consist of two policies adopted for equal employment opportunity purposes by the Department of Civil Services. These policies, which modified civil service rules, are the expanded certification policy and rescheduled examination policy.

The expanded certification policy provides for a waiver of Civil Service Commission Rule 23.2b, which rule provides in relevant part:

"Names shall be certified from among the highest examination scores in score groups. The range of scores within a certifiable score group shall be determined by the statistical reliability of the scores when practical. Each certification shall contain at least two more names than the number of vacancies to be filled. In the absence of available names on a list, supplemental names shall be certified from the list of next priority to make a full certification."

At the time of the promotions involved in the present case, the Civil Service Commission had adopted the following expanded certification policy for equal employment opportunity purposes:

"When there is reason to believe that selection procedures operate to exclude persons on the basis of sex, race or ethnic group, the State Personnel Director or

his designee may exercise the powers of the Commission and authorize a temporary waiver of Rule 23.2b, should the following conditions exist, for purposes of surfacing the top three ranked females or minorities on the employment list in order to assure that members of these affected groups who are qualified to perform the job are included within the pool of persons from which appointing authorities make the selection:

"1. The employing department has on file an affirmative action plan approved by the Michigan Equal Employment Opportunity Council (MEEOC) which includes an analysis of the department's work force to determine whether percentages of sex, race or ethnic groups in individual job categories and classifications are substantially similar to the percentages of those groups available in the work force in the relevant job market who possess the basic job related qualifications.

"2. The need for filling a position in a particular job category or classification with a female or minority group person is in accord with their plan and consistent with work force utilization standards adopted June 2, 1977 by the Michigan Equal Employment Opportunity Council.

"3. The Civil Service test for the class involved is one in which we had insufficient evidence to rule out cultural bias, or has not been proved to have an unquestioned degree of predictive validity.

"4. The employing department has reason to believe, by virtue of its work force analysis and documentation of substantial disparities between the utilization of protected group members and their availability in the relevant job market, that selection procedures operate to exclude persons on the basis of sex, race or ethnic group.

"5. The appointing authority, in making a selection under the provisions of the Expanded Certification policy, is certifying that the candidate chosen was equal to or better than any of the persons within certifiable range.

"6. In support of its request for a waiver of Rule 23.2b to allow for an Expanded Certification, the requesting department or agency must include in its letter of

request information indicating qualifications of the person being appointed which served to lead the department or agency to believe that said individual is just as well qualified as the top ranked persons on the list."

The rescheduled examination policy governs exceptions to rule 20.3, which deals with the conduct of examinations. Rule 20.3 states:

"The examinations shall be conducted by the state personnel director or by persons designated by him only at the times and places stated in the notices of acceptance of application, except as otherwise ordered by the director. Any exceptions shall be in accordance with policies adopted by the commission."

Plaintiffs challenged subpart 4 of the rescheduled examination policy, which provides:

*"For equal employment opportunity.* If the employment list does not allow consideration of qualified minority group members or women in the selection process, an examination may be given so as to afford appointing authorities this opportunity."

Rescheduled examinations consist of the same elements as regularly scheduled examinations.

The trial court ruled that the two above-quoted affirmative action policies are facially unconstitutional, stating:

"The policy of 'expanded certification' is on its face a violation of the Michigan Constitution. * * *.

"For the reasons set forth above, this court must also determine that subpart 4 of the Department of Civil Service 'Policy Governing Rescheduled Examinations' violates Const 1963, art 11, § 5."

The specific provisions of Article 11, § 5, of the

1963 Michigan Constitution, upon which the trial court relied, provide:

"The [civil service] commission shall * * * determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service.

* * *

"No person shall be appointed to or promoted in the classified service who has not been certified by the commission as qualified for such appointment or promotion. No appointments, promotions, demotions or removals in the classified service shall be made for religious, racial or partisan considerations."

The effect of the trial court's ruling is to prohibit the State of Michigan from considering race and sex in making appointments and promotions to public employment when the purpose of such considerations is to eliminate the effects of prior discriminatory practices. In analyzing these issues, the federal cases are both instructive and suggestive of the correct analysis.[1]

There is similarity between the antidiscrimination provision of Article 11, § 5, of the 1963 Michigan Constitution, and Title VII of the Federal Civil Rights Act of 1964, which makes the reasoning in the federal cases appear to apply equally to the issues within.

Both the expanded certification policy and the rescheduled examination policy may be applied only when failure to do so results in potential discrimination against minority group members or

[1] See, *Civil Rights Comm v Chrysler Corp,* 80 Mich App 368, 375, fn 4; 263 NW2d 376 (1977).

women. The expanded certification policy may be applied only where an analysis of the department's work force within a particular job category indicates that minority group members or women are underrepresented, where the employing department has reason to believe that selection procedures operate to exclude persons on the basis of sex, race, or ethnic group, where the appointing authority certifies that the person selected under the policy is equal to or better than any of the persons within the certifiable range and where the civil service test involved is either one for which there was insufficient evidence to rule out cultural bias or one which has not been proved to have an acceptable degree of predictive validity.

With respect to the rescheduled examination policy, subpart 4 may be used only if the available employment list does not allow consideration of qualified minority group members or women. If it is used, the only "benefit" given minority group members or women is that they are allowed to take the examination at a time when it is not ordinarily given.

In *Regents of the University of California v Bakke,*[2] the United States Supreme Court held that race might be considered as one factor under a special admissions program for the medical school of the state university. The underpinning of the *Bakke* case rested upon a holding that, while Title VI of the Civil Rights Act of 1964 in effect codified the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution, it

---

[2] 438 US 265; 98 S Ct 2733; 57 L Ed 2d 750 (1978). While the Court in *Bakke* held that race could be a consideration in the admissions process at defendant medical school, it also held that the challenged admission program was unlawful and that plaintiff Bakke must be admitted to the school since the school conceded that it could not carry its burden of proving that, but for the existence of the unlawful program, Bakke still would not have been admitted.

did *not* prohibit all consideration or reference to racial or sexual considerations in admission to a state owned and operated medical school.

In the case within, the asserted purpose of defendants' two affirmative action policies was to eliminate the effects of past discrimination. In *United Steelworkers of America, AFL-CIO, CLC v Weber,*[3] a voluntary affirmative action plan, which granted a preference to black employees over more senior white employees for admission to an in-plant craft training program, was approved by the United States Supreme Court. The Court held that there was not any violation of Title VII of the Civil Rights Act of 1964, which title prohibits discrimination on the basis of race.

The Court in *Weber* noted that the plan in question was merely a temporary measure for the purpose of eliminating a manifest racial imbalance and that it did not create an absolute bar to the advancement of white employees. The Court said that to interpret the Civil Rights Act as an absolute prohibition against all voluntary race conscious affirmative action efforts would be ironic in the light of the fact that the statute was the first legislative action to abolish traditional patterns of racial segregation. This was particularly true in light of the fact that the law was triggered by the nation's concern over centuries of racial injustice and was intended to improve the lot of those who had for so long been excluded from the American dream.

Although we recognize that *Weber* is a private employment case, when read together with *Bakke,* it seems clear that voluntary affirmative action is allowable in the public sector as well. For example, see *Fullilove v Klutznick.*[4]

---

[3] 443 US 193; 99 S Ct 2721; 61 L Ed 2d 480 (1979).

[4] 448 US 448; 100 S Ct 2758; 65 L Ed 2d 902 (1980).

In interpreting constitutional language where the meaning is unclear, we look to the circumstances and purpose behind their adoption.[5] Obviously, part of the purpose behind Article 11, § 5, of the 1963 Michigan Constitution was abolition of racial discrimination in employment.

In view of the similarities between Title VII of the Civil Rights Act of 1964 and the Fourteenth Amendment to the United States Constitution, as compared to Article 11, § 5, of the 1963 Michigan Constitution, the reasoning in the cited federal cases seems apropos.

In *Rand v Civil Service Comm,*[6] which was cited by the trial judge and is cited by plaintiffs in their brief, we considered the possibility that the subject tests given by the Michigan Civil Service Commission were culturally biased, although recognizing that the tests were not, in fact, offered in evidence. In view of our holding here that affirmative action plans are not necessarily facially unconstitutional, *Rand* is neither controlling nor relevant to our present disposition.[7]

Consequently, we hold that race and sex may be factors used by an employer when the plan is designed in an effort to correct prior discriminatory practices and a present selection method may not be free from discriminatory effects. As indicated, in this case presently we review only the finding of the trial court that the specific affirmative action policies, more particularly herein described, are facially unconstitutional. For the reasons that we have set forth, we disagree with that

[5] *Council No 11, AFSCME v Civil Service Comm,* 408 Mich 385, 405; 292 NW2d 442 (1980).

[6] 71 Mich App 581; 248 NW2d 624 (1976).

[7] But, *Rand* may be pertinent in the hearing to determine whether the challenged affirmative action policies were applied properly to plaintiff employees.

conclusion and reverse the order of the trial court, remanding this case for full hearing to determine the validity of the two challenged policies as applied.

Reversed and remanded.