DETROIT BASE COALITION FOR THE HUMAN RIGHTS OF THE HANDICAPPED v DEPARTMENT OF SOCIAL SERVICES

Docket No. 80661. Argued April 5, 1988 (Calendar No. 4). Decided August 23, 1988.

> Detroit Base Coalition for the Human Rights of the Handicapped and other plaintiffs brought an action in the Ingham Circuit Court against the Department of Social Services, seeking to prevent the DSS from implementing a policy mandating administrative hearings by telephone for recipients of public assistance who challenge the denial or reduction of assistance. The court, Thomas L. Brown, J., granted summary judgment for the DSS, finding that as long as the telephone hearings were constitutionally fair no requirement of law was violated, that the DSS policy change was not a change in or a violation of DSS rules, and that the DSS did not need to promulgate a rule under the Administrative Procedures Act to implement the policy. The Court of Appeals, ALLEN, P.J., and MACKENZIE, J. (J. P. SWALLOW, J., concurring), affirmed in an opinion per curiam (Docket No. 87153). The plaintiffs appeal.
>
> In a unanimous opinion by Justice BOYLE, the Supreme Court held:
>
> The telephone hearing procedures of the Department of Social Services mandating telephone hearings for claimants challenging the denial or reduction of public assistance are inconsistent with its existing rules; the telephone hearing policy violates the rule-making provisions of the Administrative Procedures Act.
>
> 1. The Department of Social Services must conduct administrative hearings for persons who contest the denial or reduction of public assistance. It also must promulgate rules which provide adequate procedures for conducting such hearings. Under the Administrative Procedures Act, before a rule may be promulgated, an agency must follow a procedure which includes public hearings, public participation, notice, approval by the

REFERENCES

Am Jur 2d, Welfare Laws §§ 107, 108.

Sufficiency of notice or hearing required prior to termination of welfare benefits. 47 ALR3d 277.

joint committee on administrative rules, and preparation of statements, with intervals between each.

2. Under existing departmental rules regarding the conducting of hearings for claimants who contest the denial or reduction of public assistance, hearings are to be held at a reasonable time, date, and place, which normally is to be in the county where the client resides. The rules contemplate hearings at which the claimant appears at the place where the decisionmaker observes, considers, and evaluates the evidence. Thus, to comport with the rules, a hearing must be conducted where a hearing referee is present. Because the policy at issue would provide only for telephone hearings conducted outside the presence of a referee or for regional hearings in the presence of a hearing referee, but outside the presence of a department representative, it represents a modification of the manner in which fair hearings are to be conducted under the existing rules and thus is inconsistent with them.

3. The Department of Social Services is subject to the rule-promulgation requirements of the Administrative Procedures Act. A rule that does not comply with the procedural requirements of the APA is invalid. The policy bulletin at issue, which mandates telephone hearings, was not issued according to the requirements for promulgation of an agency rule. It modifies existing administrative rules and cannot be considered to be an interpretative statement that only explains underlying rules; nor is it an exercise of permissive statutory authority. The telephone hearing procedures are binding and affect the rights of the public to administrative hearings and the conduct of those hearings. The new procedures are not merely mechanical details for the conduct of hearings, but rather represent substantial changes in the detailed requirements for the conduct of fair hearings to determine claimants' rights under the Social Welfare Act and applicable federal law. They are extensive and were adopted, without notice to and comment from the general public and interested parties and without consideration by a joint committee, as rules which would provide adequate procedure for a fair hearing. Because the telephone hearing policy adopted by the DSS was not promulgated as a rule within the meaning of the APA, absent full compliance with the rule-making provisions of the APA, it cannot be implemented because it is without legal authority or effect under Michigan law.

4. A court may grant declaratory relief in a case of actual

controversy within its jurisdiction. In this case, there is sufficient adversity of positions to make the issue justiciable.

Reversed.

158 Mich App 613; 405 NW2d 136 (1987) reversed.

1. ADMINISTRATIVE LAW — DEPARTMENT OF SOCIAL SERVICES — PUBLIC ASSISTANCE — TELEPHONE HEARINGS.

Hearing procedures mandated by the Department of Social Services for claimants challenging the denial or reduction of public assistance, which would provide only for telephone hearings conducted outside the presence of a hearing referee or for regional hearings in the presence of a referee, but outside the presence of a department representative, are inconsistent with existing department rules governing the conducting of fair hearings; in addition, their promulgation violates the rule-making provisions of the Administrative Procedures Act (MCL 24.231-24.264, 400.8, 400.9; MSA 3.560[131]-3.560[164], 16.408, 16.409; 1979 AC, R 400.907, 400.912).

2. ADMINISTRATIVE LAW — DEPARTMENT OF SOCIAL SERVICES — PUBLIC ASSISTANCE — HEARINGS.

Department of Social Services rules regarding the conducting of hearings for claimants who contest the denial or reduction of public assistance provide that hearings be held at a reasonable time, date, and place, which normally will be in the county where the claimant resides, contemplate hearings at which the claimant appears at the place where the decisionmaker observes, considers, and evaluates the evidence (1979 AC, R 400.907).

Legal Aid of Central Michigan (by *M. Ann Miller)* for plaintiff Lansing Welfare Rights Organization.

Legal Services of Eastern Michigan (by *Terri L. Stangl)* for plaintiffs Intermediate Welfare Rights Organization and United Welfare Rights Organization.

Legal Services of Southeastern Michigan (by *Deborah A. Johnson)* for plaintiff Gladys Thompson.

Legal Services of Western Michigan (by *Terrie J. Hartman)* for plaintiff Michelle Koren.

Michigan Legal Services (by *Susan K. McPar-*

*land*) for plaintiffs Westside Mothers and Michigan Welfare Rights Organization.

Michigan Protection & Advocacy Service (by *Dolores M. Coulter*) for plaintiffs Michigan Association of Retarded Citizens, Detroit Base Coalition for the Human Rights of the Handicapped, Social Services for the Hearing Impaired, Washtenaw County Association of Retarded Citizens, and Justice in Mental Health.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Erica W. Marsden,* Assistant Attorney General, for the defendants.

BOYLE, J. This Court granted leave to appeal to resolve two questions. We are asked to determine, first, whether the telephone hearing procedures are inconsistent with existing rules promulgated by the Department of Social Services. Second, we must determine whether the telephone hearing policy of the Department of Social Services violates the rule-making provisions of the Administrative Procedures Act. We hold that the telephone hearing procedures of the Department of Social Services are inconsistent with promulgated rules. We further hold that the telephone hearing policy of the Department of Social Services violates the rule-making provisions of the Administrative Procedures Act. Therefore, the decision of the Court of Appeals is reversed.

I

The plaintiffs consist of two groups. The first is the recipients of benefits (clients) under programs administered by the Michigan Department of Social Services, and the second is the advocacy organizations which represent them.

Pursuant to statute, administrative hearings are provided to clients whose benefits have been denied, reduced, or terminated. MCL 400.8-400.9; MSA 16.408-16.409. Since 1980, the welfare recipient or applicant has had a choice of an in-person hearing or a telephone hearing. In 1984, the DSS issued a policy bulletin stating that effective October 1, 1984, telephone hearings would be routinely conducted in cases involving applicants for or recipients of public assistance who are challenging the denial or reduction of public assistance.

On September 18, 1984, before this policy could be effected, three of the plaintiffs filed an original action for mandamus in the Court of Appeals and obtained a stay prohibiting implementation of this policy. This stay was lifted in *Goode v Dep't of Social Services,* 143 Mich App 756; 373 NW2d 210 (1985), lv den 424 Mich 882 (1986), with the Court holding that the policy did not violate the Open Meetings Act, MCL 15.261 *et seq.;* MSA 4.1800(11) *et seq.*

On September 26, 1984, this case was commenced in the Ingham Circuit Court. The plaintiffs are seeking injunctive or declaratory relief, or, in the alternative, a writ of mandamus or superintending control to prevent the defendants from implementing the policy. The plaintiffs contend that the policy is in contravention of promulgated rules of the DSS and violates the rule-making process of the Administrative Procedures Act, 1969 PA 306, ch 3, §§ 31-64, MCL 24.231-24.264; MSA 3.560(131)-3.560(164). The plaintiffs were granted an ex parte temporary restraining order prohibiting the implementation of the policy until further order of the circuit court. Both the defendants and the plaintiffs filed motions for summary disposition, and oral arguments on the instant parties' motions were heard by the circuit court on July

30, 1985. The plaintiffs did not assert that the DSS' policy violated any clients' due process or other constitutional rights. The trial court held that so long as telephone hearings were constitutionally fair, they violated no requirement of law. The court determined that the policy change did not constitute a change in or a violation of DSS rules and concluded that the DSS did not need to promulgate a rule under the APA to implement the policy. Accordingly, the trial court granted summary disposition on behalf of the defendants and dissolved the temporary restraining order. The plaintiffs appealed.

The Court of Appeals affirmed the trial court's decision.

## II

The DSS is required to conduct administrative hearings for individuals who contest the denial or reduction of public assistance. MCL 400.8-400.9; MSA 16.408-16.409. Michigan law also requires the DSS to promulgate rules which must provide adequate procedures by which to conduct the hearings. MCL 400.9(1); MSA 16.409(1):

> [T]he director shall promulgate rules for the conduct of hearings within the state department. The rules shall provide adequate procedure for a *fair* hearing of appeals and complaints, when requested in writing by an applicant for or recipient of assistance or service, financed in whole or in part by federal funds. [Emphasis added.]

Since the adoption of a rule by an agency has the force and effect of law and may have serious consequences of law for many people, the Legislature has proscribed an elaborate procedure for rule promulgation. As set forth in the APA, 1969

PA 306, ch 3, §§ 31-64, MCL 24.231-24.264; MSA 3.560(131)-3.560(164), that process requires public hearings, public participation, notice, approval by the joint committee on administrative rules, and preparation of statements, with intervals between each process.

This action was taken because, in recent years, legislative bodies have delegated to administrative agencies increasing authority to make public policy and, consequently, have recognized a need to "ensure that none of the essential functions of the legislative process are lost in the course of the performance by agencies of many law-making functions once performed by our legislatures." Bonfield, State Administrative Rule Making, § 1.1.1, p 4. Thus, the question whether the policy may be adopted without compliance with the APA is more than a question of notice and hearing requirements. It is a question of the allocation of decision-making authority.

The rules promulgated by the DSS for the conduct of hearings are found in 1979 AC, R 400.901-400.922. Two rules are applicable here. 1979 AC, R 400.907 provides that hearings be held at "a reasonable time, date, and place which normally shall be in the county where a claimant resides." Second, 1979 AC, R 400.912 provides that a party to a DSS hearing is guaranteed six specific rights for prehearing and hearing procedures.

Prior to 1980, administrative hearings for clients whose benefits had been denied, reduced, or terminated were conducted before a hearing officer at the DSS office of a client's county of residence. Between 1980 and 1984, an applicant for or recipient of benefits had the option[1] of appearing in-person at a hearing at a local DSS office or permit-

---

[1] The telephone hearing procedure was voluntary in the sense that any claimant who desired an in-person hearing could receive one if

ting a hearing referee to hear the case by tele-
phone. In an in-person hearing, the hearing ref-
eree traveled to the local office and had an oppor-
tunity to view all the witnesses and evidence. In a
telephone hearing, the claimant, any witnesses,
and the local DSS worker were in the local office,
and the hearing referee was in either the depart-
ment's Lansing or Detroit office. The hearing was
conducted by speakerphones in each office.

In 1984, the DSS issued the policy bulletin which
presents the issue in this case, Program Policy
Bulletin No. 84-16, to provide for a telephone
hearing using the same procedure in effect since
1980 or for a modified face-to-face hearing on
written request. Program Policy Bulletin No. 84-
16; Assistance Payments Manual, Item 630, p 6.
Under the "modified in-person hearing" a claimant
could travel to one of four hearing sites (Detroit,
Escanaba, Grayling, or Lansing) and be present in
the same room with the hearing referee, and the
department representative would remain in the
local office and participate by speakerphone. The
case file would remain in the local office. The
policy provides that, upon request, the department
could schedule an in-person hearing in the county
where the client lives if the client has an impair-
ment which is in issue or which makes travel to
one of the four sites impossible or impractical.

III

The plaintiffs maintain that Program Policy
Bulletin No. 84-16 is inconsistent with and alters
the existing rules. Specifically, plaintiffs contend

requested in a timely fashion. Further, the defendants maintain that
eighty percent of claimants chose the telephone hearings. This is
misleading. Only twenty percent of the claimants exercised their
option for an in-person hearing.

that the policy conflicts with Rule 400.907 which states that hearings shall be conducted at "a reasonable time, date, and place which normally shall be *in the county where a claimant resides.*" (Emphasis added.) The plaintiffs submit that Rule 400.907 provides public assistance claimants who request a hearing with the right to have their appeal heard and conducted in the county where the claimant resides, and that the policy bulletin provides only for telephone hearings conducted outside the referee's presence or for regional hearings in the presence of the hearing referee, but without the presence of the department representative.

The defendants reply that when the hearing is conducted by telephone, it actually takes place at both the place where the claimant is present and the place where the hearing referee is present. The defendants thus contend that the hearing contemplated by the policy bulletin is consistent with Rule 400.907 because it is conducted in the county where the plaintiff resides.

The defendants rely on the Court of Appeals holding in *Goode v Dep't of Social Services, supra,* that telephone hearings take place both at the place where the hearing referee is located and at the local office where the claimant attends. The decision in *Goode* has no applicability to the instant case. In *Goode,* the Court held that the telephone hearing procedure does not violate the Open Meetings Act, MCL 15.261 *et seq.;* MSA 4.1800(11) *et seq.,* which requires that the performance of a necessary governmental function be open to the public. The Court of Appeals held that teleconference calls, which could be heard through speakerphones to all in a room, and the subsequent release of a written opinion announcing the

hearing officer's decision, were sufficient to meet this requirement.

We find persuasive the approach of the Illinois appellate court to the definition of "hearing." *Sleeth v Illinois Dep't of Public Aid,* 125 Ill App 3d 847; 466 NE2d 703 (1984). In *Sleeth,* the court invalidated a telephone hearing procedure on the ground that the procedure violated Ill Rev Stat, ch 23, ¶ 11-8.2[2] which requires that hearings "shall be heard in the county where the appellant resides." The court determined the situs of the telephone hearing to be where the hearing referee is located:

> The essence of a hearing is the opportunity to be heard by the listener. One can be heard by written affidavit, by closed circuit television, by video tape recording, by telephone or by actual appearance. Each method offers an opportunity to be heard, but only with the last mentioned method is the *situs of the hearing—is the place where the listener hears—in the actual presence of the speaker.*
>
> In the instant case, the listener was not one of the local office personnel in Peoria, but the officer or officers located in Chicago. The speakers were the plaintiffs, and under the procedures followed by the [Illinois Department of Public Aid] *the plaintiffs were not present at the situs of the hearing. It follows then that the hearing was not conducted in the county of the plaintiffs' residence.* We must conclude that the procedures utilized by the IDPA for telephone conference hearings failed to meet statutory requirements of the Illinois Public Aid Code. [*Sleeth, supra,* p 852. Emphasis added.]

## The Illinois appellate court revisited this issue in

---

[2] Defendant claims that *Sleeth, supra,* is not applicable to this discussion because the Illinois statute also mandated "in-person" hearings. The court in *Sleeth* addressed the requirements of "in-person" and "in the county where claimant resides" separately.

*Padlo v Illinois Dep't of Public Aid,* 131 Ill App 3d 430; 475 NE2d 1068 (1985), and held:

> We agree that an appeal conducted by a teleconference phone call to a hearing officer located in a different county is not conducted "in person" *or "in the county where the appellant resides"* as required by sections 11—8.1 and 11—8.2 of the Illinois Public Aid Code (Ill Rev Stat 1983, ch 23, pars 11—8.1, 11—8.2). We, therefore, affirm the circuit court's order remanding the matter to the Department for a new hearing. [*Id.,* p 433. Emphasis supplied.]

We are persuaded that Rule 400.907 likewise contemplates a hearing at which the plaintiffs are present at the place where the decisionmaker is observing, considering, and evaluating the evidence. For purposes of Rule 400.907, we reject defendants' argument that the location of the telephone hearing is in two places simultaneously and hold that the hearing is considered and conducted at the place where the hearing referee is present. Therefore, telephone hearings or the modified face-to-face hearings which are the options available to claimants under the 1984 policy revision do not take place "in the county" in which the claimant resides.

A policy mandating telephone hearing procedures would mean that as a rule the hearings will *not* take place in the county in which a claimant resides, and therefore does not meet the statutory requirement of 1979 AC, R 400.907 that the hearing be held at "a reasonable time, date, and place which normally shall be in the county where a claimant resides."[3] Contrary to defendants' charac-

---

[3] Defendants note that every court that has addressed the question has held that telephone hearings do not violate due process. In *Casey v O'Bannon,* 536 F Supp 350 (ED Pa, 1982), the plaintiffs claimed that

terization, the policy mandating telephone hearings or modified in-person hearings represents a modification of the manner in which fair hearings are conducted and thus is inconsistent with the existing rules.

IV

The DSS is subject to the rule-promulgation requirements of the Administrative Procedures Act, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.*

It is undisputed that the policy bulletin at issue here was not issued pursuant to the requirements for promulgation of an agency rule. A rule that does not comply with the procedural requirements of the APA is invalid under Michigan law. See MCL 24.243, 24.245; MSA 3.560(143), 3.560(145); *Pharris v Secretary of State,* 117 Mich App 202; 323 NW2d 652 (1982) (guidelines for Secretary of State hearing examiners published in an internal policy manual were not binding because they were not promulgated pursuant to the APA).

The Legislature has defined "rule" broadly so as to defeat the inclination of "agencies to label as 'bulletins,' 'announcements,' 'guides,' 'interpretive bulletins,' . . . which, in legal operation and effect, really amount to rules . . . ." Cooper, 1 State Administrative Law, p 108.

> "Rule" means an agency regulation, statement, standard, policy, ruling or instruction of general applicability, which implements or applies law

having to travel to one of the six regional sites in order to have a face-to-face hearing violated their due process rights. *Id.,* p 351. In *Casey,* the court held that due process does not require that the examiner be able to see the witnesses as they testify. The same conclusion was reached in *New Mexico ex rel Human Services Dep't v Gomez,* 99 NM 261; 657 P2d 117 (1983). These cases are inapplicable to this discussion since plaintiffs do not contend that the telephone hearings violate due process.

enforced or administered by the agency, or which prescribes the organization, procedure or practice of the agency, including the *amendment, suspension* or rescission thereof . . . . [MCL 24.207; MSA 3.560(107). Emphasis added.]

The second portion of the definition of "rule" is a series of specific exclusions from the broader concept. The classes of rules which are exempt from the rule-making requirements represent an effort to strike a fair balance between the need for adequate procedures to govern the proposal, adoption, and effectiveness of rules on the one hand, and the conflicting need for workable, efficient, economical, and effective government on the other. Bonfield, *supra,* p 399.

We are unable to accept the Court of Appeals conclusion that the telephone hearing procedure is excepted from the APA pursuant to subsection (h) of MCL 24.207; MSA 3.560(107):

"Rule" means . . . but does not include the following:

* * *

(h) A form with instructions, an interpretive statement, a guideline, an informational pamphlet or other material which in itself does not have the force and effect of law but is merely explanatory.

This exception has been narrowly construed and requires that the interpretive statement at issue be merely explanatory. For example, in *Michigan Farm Bureau v Bureau of Workmen's Compensation,* 408 Mich 141, 159; 289 NW2d 699 (1980), the Court held that letters from the director in which he computed maximum and minimum workers' compensation weekly benefits were announce-

ments of the interpretation of an opinion of the Court of Appeals and consequently were interpretive statements within the meaning of the APA.

This construction follows from the principle that the preferred method of policymaking is by promulgation of rules. When action taken by an agency alters the status quo, those who will be affected by its future application should have the opportunity to be heard and to participate in the decisionmaking. See *Metromedia v Taxation Div,* 97 NJ 313; 478 A2d 742 (1984).

In construing administrative rules, courts apply principles of statutory construction. *General Motors Corp v Bureau of Safety & Regulation,* 133 Mich App 284; 349 NW2d 157 (1984). In addition, § 32(1) of the APA provides that any statutory definitions of words, phrases, or rules of construction made applicable to all statutes also apply to rules unless it is clear that such definition or construction was not intended. MCL 24.232; MSA 3.560(132).

The general rule when interpreting the language of a statute is to construe it according to its plain meaning. A fair interpretation of Rule 400.907 would be that at the time the rule was promulgated a *fair* hearing was a hearing which *must generally* take place in the county in which the claimant resides. It is clear that the rule as stated did not envision telephone hearings. Rather, it clearly contemplated a hearing in which all parties and the hearing referee were in attendance at one site, generally the place where the claimant resided.

The program bulletin issued by the DSS *mandating* telephone hearings modifies the existing administrative rules and cannot be considered an interpretive statement that only explains the un-

derlying rules.[4] The drafters could have adopted an in-person-only hearing rule similar to the Illinois statute or, see *Sleeth, supra,* a rule which required only that a hearing be held at a reasonable date, time, and place within the DSS' discretion. Instead, the unavoidable inference is that the drafters of Rules 400.907 and 400.912 contemplated that a hearing with all participants would usually be held in the county in which the claimant resides so as to insure that individual easy access to the decisionmaker, and that the word "normally" was inserted to allow exceptions to be made when necessary. The rule which mandates telephone hearings or modified in-person hearings is simply too broad to be deemed an interpretation of the rules, the language of which does not so much as hint at hearings which would *usually not* be held in the claimant's county.

The defendants also contend that the telephone hearing procedures are exempt from the rule-making requirements of the APA pursuant to subsection (j) of MCL 24.207; MSA 3.560(107), another exception to the definition of a rule:[5] "(j) A decision by an agency to exercise or not to exercise a permissive statutory power, although private rights or interests are affected." The defendants rely on the department's statutory authority to

---

[4] In *Spruytte v Walters,* 753 F2d 498 (CA 6, 1985), the court determined that a policy directive prohibiting inmates from receiving books except from publishers was invalid because it conflicted with the state rule allowing inmates to receive books that did not threaten security. Regularly, in response to the argument that the policy directive was simply a legitimate interpretation of the administrative rule the court concluded, "The exception created by the Policy Directive is simply too broad to be deemed an interpretation of the Administrative Rule." *Id.,* p 504.

[5] The Court of Appeals did not reach this issue, having found the telephone hearing procedure not to be a rule in accordance with MCL 24.207(h); MSA 3.560(107)(h).

administer its public assistance programs. MCL
400.10, 400.14; MSA 16.410, 16.414.[6]

The situations in which courts have recognized
decisions of the DSS as being within the § 7(j)
exception are those in which explicit or implicit

---

6   The state department is designated as the state agency to
coöperate with the federal government in the administration of
the social security act . . . including title 4, title 6, title 16,
and title 19 and any amendments thereto or supplemental
thereof. The state department may administer the food stamp
act of 1964, as amended, . . . and any other law which the
governor or the legislature of the state may designate. The
department may coöperate with the proper departments or
agencies of the federal government and with all other depart-
ments or agencies of the state and local governments, and
supervise the administration by local governmental depart-
ments or agencies of any plans established by the state in
coöperation with the federal government under these provisions
and the rules promulgated pursuant thereto. . . .

The director, with the approval of the governor, may coöper-
ate with the federal government, or any of its agencies or
instrumentalities, in handling the welfare and relief problems
and needs of the people of this state, to the extent authorized
by the laws of this state.

The director may adopt any plan required or desirable to
participate in the distribution of federal moneys or the assis-
tance of the federal government, and may accept on behalf of
the state any allotment of federal moneys. . . . The director
may promulgate rules and enter into any agreement or agree-
ments with federal, state, or local units . . . .

For the purpose of assuring full federal approval of the
activities of the department and local departments with respect
to the operation of a plan, the director may do all things
reasonable and proper to conform with federal requirements
pertaining to methods and standards of administration. [MCL
400.10; MSA 16.410.]

The state department shall have and be vested with the following
additional powers and duties:

(b) To distribute, as provided in this act, subject to federal
rules and regulations, and in accordance with the rules promul-
gated by the director, money appropriated by the legislature or
received from the federal government for the granting of aid to
dependent children . . . and for other relief or welfare services
provided by law. [MCL 400.14(1)(b); MSA 16.414(1)(b).]

authorization for the actions in question has been found. For example, in *Colombini v DSS,* 93 Mich App 157; 286 NW2d 77 (1979), the Court held the DSS' adoption of a client reporting system (CRS) in eleven Michigan counties came within the § 7(j) exception. In this case, the Legislature included a provision in the annual DSS appropriation act, 1977 PA 105, which required the department to provide proof of the cost effectiveness of the CRS and obtain approval from the Senate and House appropriations committees if it wished to continue the program beyond December 1, 1977, thereby recognizing the implementation of the CRS.

Similarly, in *Hinderer v DSS,* 95 Mich App 716, 719; 291 NW2d 672 (1980), the Court held the department's decision to implement a "lag budgeting system" in making monthly payments under its Aid to Families of Dependent Children program was an exercise of the budgetary authority pursuant to applicable federal law and regulations.[7]

The attempt to implement a mandatory telephone hearing policy is not an exercise of permissive statutory authority. The only relevant statutory provision *mandates* that the department conduct hearings pursuant to promulgated rules. MCL 400.9(1); MSA 16.409(1).

The agency's label is not dispositive and the inquiry must focus on the "actual action undertaken by the directive, to see whether the policy being implemented has the effect of being a rule." *Schinzel v Dep't of Corrections,* 124 Mich App 217, 219; 333 NW2d 519 (1983).

The telephone hearing procedures are binding and affect the rights of the public to administrative hearings and the conduct of those hearings.

[7] MCL 400.14(1)(b); MSA 16.414(1)(b) authorized the department to distribute funds under the AFDC program pursuant to federal statutes and regulations.

The new procedures are not merely mechanical details for the conduct of hearings, but, rather, represent substantial changes in the detailed requirements for the conduct of fair hearings to determine claimants' rights under the Social Welfare Act and applicable federal law. The rules are extensive and were adopted, without notice and comment from the general public and interested parties and consideration by a joint committee, as rules which would provide "adequate procedure for a fair hearing." MCL 400.9(1); MSA 16.409(1). An agency is under a duty to follow its own rules. *Rand v Civil Service Comm,* 71 Mich App 581; 248 NW2d 624 (1976). This policy bulletin represents an alteration of the present rules and therefore must be promulgated as a rule under the proper procedures set out by the APA.

In sum, the telephone hearing policy is inconsistent with the existing rules and therefore cannot be implemented without benefit of rulemaking. The telephone hearing procedure has the full force and effect of law and represents an alteration or change from the rule. The department's effort to change substantially the manner in which it conducts its hearings solely through an internal policy bulletin and manual revision undermines the fundamental purpose of the APA:

> [B]ecause the adoption of a rule by an agency has the force and effect of law and may have serious consequences for many people, the legislature prescribed an elaborate procedure for rule promulgation in Chapter 3 of the Michigan Administrative Procedures Act . . . . These provisions are calculated to invite public participation in the rule-making process, prevent precipitous action by the agency, prevent the adoption of rules that are illegal or that may be beyond the legislative intent, notify affected and interested persons

of the existence of the rules, and make the rules
readily accessible after adoption. [Bienenfeld,
Michigan Administrative Law, p 4-1.]

In the absence of rulemaking then, appellants
have been deprived of rights under the APA 1) to
receive notice of the telephone hearing policy as a
proposed rule, 2) to comment on the rule at public
hearings, and 3) to review the rule through the
joint committee on administrative rules of the
Michigan Legislature.

The telephone hearing policy adopted by the
Department of Social Services was not promul-
gated as a rule within the meaning of the APA and
therefore, absent full compliance with the rule-
making provisions of the APA, the policy cannot be
implemented because it is without legal authority
or effect under Michigan law.

v

The defendants contend that what plaintiffs be-
lieved might have happened when the revised
procedures were implemented was purely specula-
tive and without a factual basis. Further, defen-
dants claim that since the policy change at issue
was not yet implemented when the lawsuit was
started, none of the plaintiffs had been prejudiced
by the new procedures.

This attempt by the DSS to apply a policy that
will govern the future conduct of administrative
hearings without adopting the policy as a rule
deprived the plaintiffs of important rights to par-
ticipate in the promulgation of the agency's policy.
The DSS failed to follow procedural requirements
required by statute, and the plaintiffs, whose inter-
ests were intended to be protected or regulated

through the procedures, are the proper parties[8] to challenge the conduct of the DSS, i.e., noncompliance with the provisions of the APA.

In this context, declaratory judgment is appropriate. MCR 2.605(A) provides that a Michigan court may grant declaratory relief "[i]n a case of actual controversy within its jurisdiction . . . ." The controversy is whether the DSS was under a duty to comply with the notice and public-hearing requirements of §§ 41 and 42 of the APA before issuing the directive mandating the telephone hearings.[9]

The purpose of a declaratory judgment is to enable the parties to obtain an adjudication of their rights before actual injuries or losses have occurred. *Shavers v Attorney General,* 402 Mich 554; 267 NW2d 72 (1978). Further, the "declaratory judgment rule was intended and has been liberally construed to provide a broad, flexible remedy with a view to making the courts more accessible to the people." *Id.,* p 588. See 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 682-708. What is essential to an actual controversy is that plaintiffs plead and prove facts which indicate an adverse interest assuring the sharpening of the issues raised.[10]

---

[8] Enforcement of the substantial-compliance standard "even at the insistence of a person who could not show personal prejudice, 'will encourage agency adherence to the statutory procedure and further the . . . purpose of increasing agency accountability . . . .'" Bonfield, *supra,* p 366.

[9] Ample authority supports the proposition that denial of a procedural opportunity to challenge agency action can give rise to standing regardless of the likelihood of success on the merits. 13 Wright & Miller, Federal Practice and Procedure (2d ed), § 3531.4, pp 433-434. See, also, *Nat'l Conservative PAC v Federal Election Comm,* 200 US App DC 89; 626 F2d 953 (1980); *Committee for Full Employment v Blumenthal,* 196 US App DC 155, 158; 606 F2d 1062 (1979); *Gardner v FCC,* 174 US App DC 234; 530 F2d 1086 (1976).

[10] For example, see *Crawford v Secretary of State,* 160 Mich App 88; 408 NW2d 112 (1987).

The policy bulletin issued by the DSS was, in effect, a rule and, had the plaintiffs not filed the suit, would be binding as of October 1, 1984. Section 63 of the APA authorizes an agency to issue a declaratory ruling on how a statute administered by the agency or a rule or order of the agency may apply to an actual state of facts. Section 64 provides that no one may commence an action for a declaratory judgment to test the validity or applicability of a rule without first requesting a declaratory ruling. This declaratory ruling, or the refusal to issue one, is then subject to judicial review.[11]

The plaintiffs are persons who have a distinct individual interest separate from that of the general public that will be affected[12] by agency policy and have been denied the opportunity to participate in that process.

In this context it is clear that there is sufficient adversity of positions to make the issue justiciable. The decision of the Court of Appeals which affirmed the trial court's dismissal of plaintiffs' complaint is reversed. Program Policy Bulletin No. 84-16 is inconsistent with the existing rules governing administrative hearings and, unless promulgated pursuant to the rule-making procedures of the

[11] The defendants issued the policy bulletin and refused to issue a declaratory ruling in response to plaintiffs' request.

[12] Plaintiffs-claimants threatened with termination of benefits have submitted affidavits detailing the specific problems they would experience with the mandatory hearings which were scheduled for them under Program Policy Bulletin No. 84-16 and, in addition, noted a willingness and desire to participate in the rule-making procedure through public hearings. For example, a claimant sanctioned by the DSS for alleged noncoöperation in connection with a paternity action noted the inability of the hearing referee to observe behavior would be detrimental because credibility would be the key issue in that hearing. Another individual, since there was an important factual dispute with the caseworker, needed an in-person hearing and witnesses present to properly plead his case. Neither the claimant nor the witnesses could afford the costs or the time to travel to Lansing.

APA, the DSS cannot implement a mandatory telephone hearing policy.

RILEY, C.J., and LEVIN, BRICKLEY, CAVANAGH, ARCHER, and GRIFFIN, JJ., concurred with BOYLE, J.