BLOOMFIELD TOWNSHIP v KANE

Docket No. 308241. Submitted July 10, 2013, at Detroit. Decided August 13, 2013, at 9:05 a.m.

Jordan Kane was charged with operating a motor vehicle while intoxicated in violation of MCL 257.625(1) and Bloomfield Township Ordinances, § 36-19, which adopts the Michigan Vehicle Code, MCL 257.1 *et seq.*, as an ordinance of Bloomfield Township, after he was involved in a single-vehicle accident. A laboratory analysis indicated that defendant had 250 nanograms of Zolpidem, a sedative used to treat insomnia, per milliliter of blood in his system. Defendant moved to dismiss the charges in the 48th District Court, asserting that Zolpidem was not a controlled substance listed on schedules 1 to 5 of article 7 of the Public Health Code, MCL 333.7101 *et seq.* The court, Diane D'Agostini, J., denied the motion. Defendant appealed in the Oakland Circuit Court, Rudy J. Nichols, J., which reversed, holding that Zolpidem was not listed by statute as a controlled substance, that MCL 257.625(1) did not incorporate the rules promulgated by the Board of Pharmacy and, thus, that the prosecution could not establish the elements of the offense. The prosecution appealed by leave granted and defendant cross-appealed.

The Court of Appeals *held*:

1. Under MCL 257.625(1) of the Michigan Vehicle Code, a person shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles if the person is operating while intoxicated. Under MCL 257.625(1)(a), a person is operating while intoxicated if the person is under the influence of a controlled substance. The Michigan Vehicle Code defines the term "controlled substance" by reference to the definition contained in the Public Health Code. MCL 333.7104(2) of the Public Health Code defines "controlled substance" as a drug, substance, or immediate precursor included in schedules 1 to 5 of part 72 of the Public Health Code, MCL 333.7201 *et seq.* Zolpidem is not listed on the statutory schedules. The Public Health Code, however, delegates the classification of additional substances to the Board of Pharmacy, which classified Zolpidem as a schedule-4 controlled substance in Mich Admin

Code R 338.3123(1)(aaa). Administrative rules have the force and effect of law. Accordingly, the circuit court erred by dismissing the charged offense on the basis that Zolpidem was not listed by statute as a controlled substance.

2. Under MCL 257.625(8) a person shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles if the person has in his or her body any amount of a schedule-1 controlled substance under MCL 333.7212, or a rule promulgated under that section, or of a controlled substance described in MCL 333.7214(a)(iv). Defendant contended that because subsection (8) specifically refers to the administrative rules but subsection (1) does not, under the doctrine of *expressio unius est exclusio alterius*, the lack of a reference to the administrative rules in subsection (1) meant that he could not be convicted of violating subsection (1) for driving under the influence of a substance that is only classified as a controlled substance in the administrative rules. The doctrine, however, could not be used to defeat clear legislative intent. The plain language of MCL 257.625 indicates that subsection (1) governs operating a vehicle while intoxicated generally, while subsection (8) is a zero-tolerance provision specifically relating to schedule-1 substances, including those identified in administrative rules promulgated under MCL 333.7212, and to certain schedule-2 substances. The fact that subsection (1) fails to refer to a schedule or to the administrative rules does not prevent criminal prosecution pursuant to the terms of that general provision.

3. A party cannot claim lack of notice when the assertion is belied by the pleadings he or she has filed in the case. In this case, although defendant contended that he lacked notice of the requisite charge, his brief on appeal and lower court pleadings identified the statute at issue, alleged that the statute was inapplicable to the substance ingested, and contested whether he had the requisite *mens rea*. Thus, defendant's argument that he lacked notice of the charge was belied by his pleadings. In addition, defendant alleged that Bloomfield Township's adoption of the entire motor vehicle code failed to provide notice of the specific crime that he was charged with. The adoption of the Michigan Vehicle Code by local ordinance, however, did not leave defendant to wonder what violation was at issue given the specific citation in the misdemeanor complaint to the Michigan Vehicle Code violation, MCL 257.625(1).

Reversed and remanded for further proceedings including reinstatement of the charged offense.

CRIMINAL LAW — OPERATING WHILE INTOXICATED — CONTROLLED SUBSTANCES — ADMINISTRATIVE RULES.

> Under MCL 257.625(1) of the Michigan Vehicle Code, a person shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles if the person is operating while intoxicated; under MCL 257.625(1)(a), a person is operating while intoxicated if the person is under the influence of a controlled substance; the Michigan Vehicle Code defines the term "controlled substance" by reference to the definition contained in the Public Health Code, which, in MCL 333.7104(2), defines "controlled substance" as a drug, substance, or immediate precursor included in schedules 1 to 5 of part 72 of the Public Health Code, MCL 333.7201 *et seq.*; the Public Health Code delegates the classification of additional substances to the Board of Pharmacy; substances included in the schedules under administrative rules promulgated by the Board of Pharmacy may be used to support a charge of operating while intoxicated.

*Secrest Wardle* (by *Vahan C. Vanerian*) for Bloomfield Township.

*Foley & Mansfield, PLLP* (by *Howard I. Wallach*), for Jordan Kane.

Before: FORT HOOD, P.J., and FITZGERALD and RONAYNE KRAUSE, JJ.

PER CURIAM. The prosecution appeals by leave granted the circuit court opinion and order dismissing the charge of operating a motor vehicle while intoxicated[1] in violation of MCL 257.625(1) and Bloomfield Township Ordinances, § 36-19.[2] We reverse the judgment of the Oakland Circuit Court and remand this case to the 48th District Court for reinstatement of the charge and for proceedings consistent with this opinion.

---

[1] A person is "operating while intoxicated" if he or she is "under the influence of . . . a controlled substance . . . ." *People v Koon*, 494 Mich 1, 6 n 14; 832 NW2d 724 (2013) (citation and quotation marks omitted).

[2] The local ordinance adopts the Michigan Vehicle Code, MCL 257.1 *et seq.*, as an ordinance of Bloomfield Township.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On October 6, 2010, Officer Steve Sherwood of the Bloomfield Township Police Department was informed of a disabled vehicle on the Interstate-75 business loop at Opdyke Road.[3] Upon arriving at the scene, the officer found defendant trying to start the vehicle, which had extensive damage including damage to the driver's side wheels. Defendant informed the officer that he was driving when he suddenly hit the guardrail. The officer noted that defendant had difficulty maintaining his balance and that his speech was impaired. Defendant allegedly told the officer that he takes Ritalin, although he had not taken the drug in some time, but that his mother had given him Xanax, which caused his driving accident. Defendant was transported to a hospital where a blood sample was taken. The lab results indicated that defendant had 250 nanograms of Zolpidem per milliliter of blood in his system. Zolpidem is a sedative used to treat insomnia that is sold under the brand name Ambien. Defendant was initially charged with operating a vehicle with a controlled substance in his system, MCL 257.625(8), but that charge was dismissed, and he was instead charged with operating while intoxicated, specifically while under the influence of a controlled substance, MCL 257.625(1)(a). Defendant moved to dismiss the charges in district court, alleging that Zolpidem was not a controlled substance contained in schedules 1 to 5 of the controlled substances act, MCL 333.7101 *et seq.* In an affidavit,

---

[3] An evidentiary hearing was not conducted in the lower courts, and a police report of the incident is not contained in the lower court record. Accordingly, this statement of facts was crafted using facts found in the prosecution's brief on appeal, the arguments made during the hearing on the motion to dismiss held in district court, and defendant's affidavit. Defendant did not dispute the basic facts delineated in the prosecution's brief on appeal.

defendant further asserted that he had mistakenly ingested Zolpidem and, therefore, he did not have the requisite *mens rea* to support the elements of the offense. The district court denied the motion to dismiss, holding that the regulation of Zolpidem by administrative rule was sufficient to support the elements of the offense. The district court did not rule on the *mens rea* issue. On appeal, the circuit court reversed, holding that Zolpidem was not listed by statute as a controlled substance, and the offense at issue, MCL 257.625(1), did not incorporate the rules promulgated by the Board of Pharmacy; therefore, the prosecution could not establish the elements of the offense of operating a vehicle while under the influence of a controlled substance. We granted the prosecution's application for leave to appeal.[4]

## II. STANDARD OF REVIEW AND STATUTORY CONSTRUCTION

The interpretation and application of a statute presents a question of law that the appellate court reviews de novo. *People v Zajaczkowski*, 493 Mich 6, 12; 825 NW2d 554 (2012). "[T]he intent of the Legislature governs the interpretation of legislatively enacted statutes." *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012). The intent of the Legislature is expressed in the statute's plain language. *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012). When the statutory language is plain and unambiguous, the Legislature's intent is clearly expressed, and judicial construction is neither permitted nor required. *Id.* If a statute specifically defines a term, the statutory definition is controlling. *People v Williams*, 298 Mich App 121, 126; 825 NW2d 671 (2012). When "terms are not expressly

---

[4] *Bloomfield Twp v Kane*, unpublished order of the Court of Appeals entered September 28, 2012 (Docket No. 308241).

defined anywhere in the statute, they must be interpreted on the basis of their ordinary meaning and the context in which they are used." *Zajaczkowski*, 493 Mich at 13. However, technical words and phrases that have acquired a peculiar and appropriate meaning in law shall be construed and interpreted in accordance with that meaning. See MCL 8.3a; *Bylsma*, 493 Mich at 31. Additionally, when a term is not defined in a statute, the dictionary definition of the term may be consulted or examined. *People v Perkins*, 473 Mich 626, 639; 703 NW2d 448 (2005). The court's reliance on dictionary definitions assists the goal of construing undefined terms in accordance with their ordinary and generally accepted meanings. *People v Morey*, 461 Mich 325, 330-331; 603 NW2d 250 (1999). "However, recourse to dictionary definitions is unnecessary when the Legislature's intent can be determined from reading the statute itself." *People v Stone*, 463 Mich 558, 563; 621 NW2d 702 (2001).

When interpreting a statute, the court must avoid a construction that would render part of the statute surplusage or nugatory. *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011). "Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion." *People v Peltola*, 489 Mich 174, 185; 803 NW2d 140 (2011). "When the Legislature adopts or incorporates by reference a provision of an existing statute, regulation, or rule, the separate provision that is adopted or incorporated becomes part of the legislative enactment as it existed at the time of the legislation, and any subsequent amendment of the incorporated provision has no effect." *Jager v Rostagno Trucking Co, Inc*, 272 Mich App 419, 423; 728 NW2d 467 (2006). "The Legislature is presumed to act with knowledge of appel-

late court statutory interpretations, and silence by the Legislature for many years following judicial construction of a statute suggests consent to that construction." *People v Higuera*, 244 Mich App 429, 436; 625 NW2d 444 (2001) (citation omitted). When two statutes or provisions lend themselves to a construction that avoids conflict, that interpretation is controlling. *People v Ellis*, 224 Mich App 752, 756; 569 NW2d 917 (1997).

Statutes that relate to the same matter are considered to be *in pari materia. People v Perryman*, 432 Mich 235, 240; 439 NW2d 243 (1989). "Statutes that address the same subject or share a common purpose are *in pari materia* and must be read together as a whole." *People v Harper*, 479 Mich 599, 621; 739 NW2d 523 (2007). This general rule of statutory interpretation requires courts to examine the statute at issue in the context of related statutes. *Id.*

> Statutes *in pari materia* are those which relate to the same person or thing, or the same class of persons or things, or which have a common purpose. It is the rule that in construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although enacted at different times, and containing no reference one to the other. [*Detroit v Mich Bell Tel Co*, 374 Mich 543, 558; 132 NW2d 660 (1965), overruled on other grounds by *City of Taylor v Detroit Edison Co*, 475 Mich 109, 120; 715 NW2d 28 (2006).]

When statutes relate to the same subject matter, they must be construed together for purposes of determining legislative intent. *Van Antwerp v Michigan*, 334 Mich 593, 605; 55 NW2d 108 (1952). The objective of the *in pari materia* rule is to give effect to the legislative purpose as found in statutes addressing a particular subject. *World Book, Inc v Dep't of Treasury*, 459 Mich

403, 416; 590 NW2d 293 (1999). "Conflicting provisions of a statute must be read together to produce an harmonious whole and to reconcile any inconsistencies whenever possible." *Id.* at 416. See also *Mich Basic Prop Ins Ass'n v Office of Fin & Ins Regulation*, 288 Mich App 552, 560; 808 NW2d 456 (2010).

When the Legislature delegates power to a commissioner, the commissioner is authorized to adopt rules and regulations as the commissioner deems necessary to give effect to the purposes underlying the laws of this state. See *American Community Mut Ins Co v Comm'r of Ins*, 195 Mich App 351, 360; 491 NW2d 597 (1992). These rules and regulations must be promulgated in accordance with the provisions of the Administrative Procedures Act.[5] *Id.* at 360-361. Each agency subject to the provisions of the Administrative Procedures Act must adopt rules governing the procedures prescribed or authorized thereby. *New Prods Corp v State Hwy Comm'r*, 352 Mich 73, 79; 88 NW2d 528 (1958). "A rule adopted by an agency in accordance with the Administrative Procedures Act, MCL 24.201 *et seq.*, is a legislative rule that has the force and effect of law." *Morley v Gen Motors Corp*, 252 Mich App 287, 290; 651 NW2d 808 (2002). "Since the adoption of a rule by an agency has the force and effect of law and may have serious consequences of law for many people, the Legislature has [prescribed] an elaborate procedure for rule promulgation." *Detroit Base Coalition for the Human Rights of the Handicapped v Dep't of Social Servs*, 431 Mich 172, 177; 428 NW2d 335 (1988). The rulemaking process includes "public hearings, public participation, notice, approval by the joint committee on administrative rules, and preparation of statements, with intervals between each process." *Id.* at 177-178. These require-

---

[5] MCL 24.201 *et seq.*

ments were imposed to account for the delegation by legislative bodies to administrative agencies the "authority to make public policy . . . ." *Id.* at 178. Further, these requirements assure that the essential functions of the legislative process are not forfeited when agencies perform lawmaking functions that were previously carried out by the Legislature. *Id.* "In construing administrative rules, courts apply principles of statutory construction." *Id.* at 185. Under the Administrative Procedures Act, "any statutory definitions of words, phrases, or rules of construction made applicable to all statutes also apply to rules unless it is clear that such definition or construction was not intended." *Id.* at 185; see also MCL 24.232(1).

Article 7 of the Public Health Code, MCL 333.7101 *et seq.*, governs controlled substances. MCL 333.7201 provides that the "administrator shall administer this article and may add substances to, or delete or reschedule all substances enumerated in the schedules in [MCL 333.7212, MCL 333.7214, MCL 333.7216, MCL 333.7218, and MCL 333.7220] in compliance with the administrative procedures act of 1969." The "administrator" is defined as "the Michigan board of pharmacy or its designated or established authority." MCL 333.7103(2); see also *People v Turmon*, 417 Mich 638, 645; 340 NW2d 620 (1983). When making a determination regarding the classification of a substance, the Board of Pharmacy must consider: (1) the actual or relative potential for abuse, (2) the scientific evidence of its pharmacological effect, (3) the current scientific knowledge regarding the substance, (4) the history and current pattern of abuse, (5) the scope, duration, and significance of abuse, (6) the risk to the health of the general public, (7) the potential for the substance to create dependence, and (8) whether the substance is an immediate precursor to a substance already controlled

under MCL 333.7201 *et seq.* MCL 333.7202(1); *Turmon*, 417 Mich at 646. If the substance presents an imminent danger, the Board of Pharmacy may schedule or re-schedule the substance by emergency rule. MCL 333.7203(2). A scientific commission advises and con-sults with the Board of Pharmacy with regard to the classification of substances as controlled substances. MCL 333.7206; *Turmon*, 417 Mich at 646. The classifi-cation of a substance as a controlled substance is premised on the possession of certain characteristics. *Turmon*, 417 Mich at 646. The Legislature created clear, detailed standards to guide the Board of Phar-macy and to facilitate judicial review. *Id.* at 647. Be-cause new drugs are developed and introduced at a rapid rate and incredible ingenuity is exhibited in the discovery of new methods to abuse drugs, it is necessary to employ "a measure of flexibility in the area of drug regulation." *Id.* at 647-648.

In *Turmon, id.* at 643, the defendant was charged with possession with intent to deliver 22 tablets of phenmetrazine and possession with intent to deliver 43 tablets of pentazocine. He pleaded guilty to the reduced charge of possession of pentazocine and was sentenced to two years' probation. *Id.* On appeal, the defendant alleged that the Legislature's delegation of authority to the Board of Pharmacy to schedule controlled sub-stances was improper and further asserted that he was not given notice that possession of pentazocine was a criminal act. *Id.* Specifically, the defendant alleged that the Legislature could not delegate power to the Board of Pharmacy to create criminal offenses, and administra-tive amendments to the controlled substances act de-prived him of fair notice that possession of pentazocine was a criminal offense. *Id.* at 643, 649, 655. In a concise statement, our Supreme Court rejected the defendant's challenges:

> We hold that the Legislature's delegation of authority to add controlled substances to pre-existing schedules in accordance with specific criteria is not an unlawful delegation of power despite the fact that penal consequences flow from violation of the board's rules. The statute contains sufficient standards and safeguards to avoid infirmity under both separation of powers and due process challenges. Additionally, the board did not abuse its discretion in the promulgation of the rule. [*Id.* at 641-642.]

Our Supreme Court examined the Board of Pharmacy's eight-factor test for determining if a substance should be added, deleted, or reclassified among the schedules. The Court noted that the board was assisted by a commission that included medical professionals, and that the Board of Pharmacy could only include a substance on a schedule if it determined the substance possessed certain characteristics found within that schedule. For example, a schedule-3 substance must have less of a potential for abuse than substances listed on schedules 1 and 2, must have a currently accepted medical use, and it must be true that abuse of the substance might lead to moderate or low physical dependence or high psychological dependence. *Id.* at 646-647. In light of these safeguards to agency action, the Court rejected the assertion that the board was permitted to act in an arbitrary or discriminatory manner. *Id.* at 647-648.

> [T]he power to define crimes, unlike some legislative powers, need not be exercised exclusively and completely by the Legislature. Provided sufficient standards and safeguards are included in the statutory scheme, delegation to an executive agency is appropriate, and often necessary, for the effectuation of legislative powers.
>
> Clearly, the controlled substances act is premised on a legislative design . . . . The Legislature formulated a comprehensive group of crimes dealing with controlled substances. An index of drugs adjudged dangerous or harmful

was compiled, and the drugs were graduated according to potential for abuse. Penalties, including fines and incarceration, were coordinated to reflect the gravity of the offense and the seriousness of the controlled substance involved. Finally, the Board of Pharmacy, an eight-member board consisting of six pharmacists and two public members, was given the strictly controlled authority to modify the controlled substances schedule to [ensure] that it reflect current developments in the drug industry.

... While it is true that more serious consequences flow from a felony conviction under the controlled substances act, we find no meaningful distinction between the delegation of power to make rules regarding misdemeanor offenses and the delegation of rulemaking relative to felony offenses. The severity of the penalty does not destroy the accountability of the Legislature nor the safeguards provided to protect the public. Therefore, the Legislature has not unconstitutionally delegated a nondelegable power. [*Id.* at 652-653.]

Our Supreme Court also rejected the defendant's claim that he lacked notice of the violation of law because the classification was contained in an administrative rule and the schedule statutes were not amended to reflect the inclusion of new controlled substances, *id.* at 655-658. The Court stated:

We do not find it unreasonable to expect the people of this state to acquire familiarity with its laws through reference to a compilation published by the state. Reference to the controlled substances act would lead the reader to conclude that the schedules are continually being modified by the Board of Pharmacy and that the agency's supplementation should be sought elsewhere. . . .

* * *

... [P]ublication of the rule in the administrative code provided sufficient notice that defendant's conduct was proscribed. [*Id.* at 657, 660.]

III. APPLICATION OF LAW TO THE FACTS

In the present case, defendant was charged with violating MCL 257.625(1). MCL 257.625 addresses offenses involving the operation of a vehicle while under the influence and provides in relevant part:

> (1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated. As used in this section, "operating while intoxicated" means either of the following:

> (a) The person is under the influence of alcoholic liquor, a controlled substance, or other intoxicating substance or a combination of alcoholic liquor, a controlled substance or other intoxicating substance.

> (b) The person has an alcohol content of 0.08 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine, or, beginning October 1, 2018, the person has an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine.

> \* \* \*

> (8) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person has in his or her body any amount of a controlled substance listed in schedule 1 under section 7212 of the public health code, 1978 PA 368, MCL 333.7212, or a rule promulgated under that section, or of a controlled substance described in section 7214(a)(*iv*) of the public health code, 1978 PA 368, MCL 333.7214.

In the present case, defendant was ultimately charged with violating MCL 257.625(1)(a) for having Zolpidem

in his system when he was involved in the accident. In order to evaluate the validity of his defense, we must examine the relevant provisions of the Michigan Vehicle Code[6] and the Public Health Code[7] *in pari materia* because they address the same subject matter. *Harper*, 479 Mich at 621. Although MCL 257.625(1)(a) does not define the term "controlled substance," MCL 257.8b of the Michigan Vehicle Code defines the term as "a controlled substance or controlled substance analogue as defined in section 7104 of the public health code, Act No. 368 of the Public Acts of 1978, being section 333.7104 of the Michigan Compiled Laws."[8] MCL 333.7104(2) of the Public Health Code defines "controlled substance" as "a drug, substance, or immediate precursor included in schedules 1 to 5 of part 72 [MCL 333.7201 *et seq.*]."

As previously noted, article 7 of the Public Health Code governs controlled substances. MCL 333.7101 *et seq.* Although the code contains five schedules listing regulated substances,[9] Zolpidem, the substance ingested by defendant, is not listed on those schedules. However, our inquiry does not conclude with the examination of the schedules. Rather, the Michigan Vehicle Code requires that for purposes of determining what constitutes a controlled substance, the health code must be examined, and the health code appropriately delegates classification of additional drugs through the use of administrative rules, and administrative rules have the force and effect of law. *Turmon*, 417 Mich at

---

[6] MCL 257.1 *et seq.*

[7] MCL 333.1101 *et seq.*

[8] Defendant contends that the Michigan Vehicle Code does not define "controlled substance." On the contrary, MCL 257.8b defines the term "controlled substance" by reference to the Public Health Code.

[9] See MCL 333.7212, MCL 333.7214, MCL 333.7216, MCL 333.7218, and MCL 333.7220.

652-653; *Morley*, 252 Mich App at 290. In the area of drug regulation, resort to the flexibility of administrative rules is necessary because new drugs are developed and introduced at a rapid rate. *Turmon*, 417 Mich at 647-648. Therefore, the Legislature's delegation to the Board of Pharmacy the authority to create penal consequences from board rules is not constitutionally infirm. Zolpidem is classified as a schedule-4 controlled substance pursuant to Mich Admin Code R 338.3123(1)(aaa). Accordingly, the circuit court erred by dismissing the charged offense.

Defendant contends that the plain language of MCL 257.625 demonstrates that the prosecution cannot prove the elements of the offense. Specifically, defendant was originally charged with violating MCL 257.625(8), which contains an express reference to schedule 1 of the Public Health Code as well as the rules promulgated under that section, however, MCL 257.625(1) contains no reference to the schedules or the administrative rules. Therefore, defendant submits, the doctrine of *"expressio unius est exclusio alterius"* applies to bar his prosecution under MCL 257.625(1). Under the doctrine, "the express mention in a statute of one thing implies the exclusion of other similar things . . . ." *People v Jahner*, 433 Mich 490, 500 n 3; 446 NW2d 151 (1989). However, this maxim is merely an aid to interpreting legislative intent and cannot govern if the result would defeat the clear legislative intent. *American Federation of State, Co & Muni Employees v Detroit*, 267 Mich App 255, 260-261; 704 NW2d 712 (2005).

In this case, we cannot apply this doctrine because it would render MCL 257.625(1) surplusage or nugatory. *Huston*, 489 Mich at 462. The plain language of MCL 257.625 indicates that MCL 257.625(1) governs operat-

ing a vehicle while intoxicated generally, while MCL 257.625(8) is a zero-tolerance provision specifically relating to schedule-1 substances, including those identified in rules promulgated under MCL 333.7212, and to certain schedule-2 substances. The reason specific schedules and rules are mentioned in MCL 257.625(8) is to narrow the applicability of that zero-tolerance provision. The fact that MCL 257.625(1) fails to refer to a schedule or the administrative rules does not prevent criminal prosecution pursuant to the terms of that broader provision. The doctrine of *"expressio unius est exclusio alterius"* is inapplicable here.

Next, defendant alleges that Bloomfield Township's adoption and citation of the entire Michigan Vehicle Code failed to provide notice of the crime that he was charged with, thereby depriving him of notice of the charged offense and impacting his ability to defend against the charge. We disagree. A review of the misdemeanor complaint reveals that defendant was charged with violating the local ordinance as well as MCL 257.625(1). The adoption of the Michigan Vehicle Code by local ordinance did not leave defendant to wonder what violation was at issue because of the specific citation to the Michigan Vehicle Code violation, MCL 257.625(1). Additionally, although defendant contends that he lacks notice of the charge, his brief on appeal and lower court pleadings identified the statute at issue, alleged that the statute was inapplicable to the substance ingested, and contested whether he had the requisite *mens rea*. A party cannot claim lack of notice when the assertion is belied by the pleadings he or she has filed in the case. See *DeGeorge v Warheit*, 276 Mich App 587, 592-593; 741 NW2d 384 (2007). This claim of error is without merit.[10]

---

[10] We also note that defendant contends that it is "undisputed" that he did not have the requisite *mens rea* to commit the offense. This issue was

Reversed and remanded for reinstatement of the charged offense and for proceedings consistent with this opinion. We do not retain jurisdiction.

FORT HOOD, P.J., and FITZGERALD and RONAYNE KRAUSE, JJ., concurred.

---

not ruled upon by the lower courts, and we are an error-correcting court. *Burns v Detroit (On Remand)*, 253 Mich App 608, 615; 660 NW2d 85 (2002). "[U]nder MCL 257.625(1), [conviction of operating a motor vehicle while intoxicated] requires proof of three elements: (1) the defendant operated a motor vehicle (2) on a highway or other place open to the general public or generally accessible to motor vehicles (3) while under the influence of liquor or a controlled substance, or a combination of the two, or with a blood alcohol content of 0.08 grams or more per 100 milliliters of blood." *People v Hyde*, 285 Mich App 428, 448; 775 NW2d 833 (2009) (emphasis omitted). The offense of operating a motor vehicle while under the influence is "not a specific intent crime . . . ." See *People v Raisanen*, 114 Mich App 840, 844; 319 NW2d 693 (1982). "[U]nder the influence" effectively means that the defendant was "substantially deprived of normal control or clarity of mind." See *id.* The elements of the offense do not contain a requirement that the defendant knowingly ingest a controlled substance. However, we do not have undisputed record evidence to apply this law to the facts of this case. The credibility of an assertion presents an issue for the trier of fact. *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010). In light of the limited record, we cannot analyze whether a mistaken ingestion occurred, an issue for the trier of fact, and whether the factual predicate of the defense of mistake could be supported at trial. Therefore, we do not resolve this issue.