*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 22, 2022

Plaintiff-Appellee,

v

No. 362219
Lenawee Circuit Court
LC No. 21-020503-FH

TIMOTHY RICHARD ELLENWOOD,

Defendant-Appellant.

Before: JANSEN, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the order denying his motion to dismiss Count 2 of the information charging him with operating a snowmobile while intoxicated causing death, MCL 324.82127(4). On appeal, defendant argues that the bindover on Count 2 should have been dismissed because there was not probable cause to believe he was driving while under the influence. We reverse and remand for further proceedings.

On February 13, 2021, there was an ice fishing festival taking place on Devil's Lake. There were approximately 20 to 50 shanties on the ice that evening and lots of people gathered on the ice near bonfires or in shanties. At around 7:00 p.m. on that dark winter night, defendant was traveling from a tavern to his friend's house on a snowmobile when he drove his snowmobile into an ice fishing shanty, killing the man inside the shanty. Defendant was charged with reckless driving causing death, contrary to MCL 769.1f, and operating a snowmobile while intoxicated, causing death, contrary to MCL 324.82127.

An eyewitness testified at the preliminary examination, after prodding from the prosecuting attorney, that defendant may have been traveling at approximately 65 to 70 miles per hour (mph) before hitting the shanty. This eyewitness observed the crash from at least 100 yards away. The shanty was made of dark material with little or no reflective material facing defendant as he

---

[1] *People v Ellenwood*, unpublished order of the Court of Appeals, entered August 18, 2022 (Docket No. 362219).

approached the shanty. A Michigan State Police trooper testified that there were no signs of significant braking along defendant's path before the location of the shanty. The trooper further testified that defendant's snowmobile went about 80 to 83 feet from the location of the shanty before stopping, dragging the shanty and decedent with it. The snowmobile's speedometer was found detached from the snowmobile with the tac stuck at 80 kilometers per hour. This indicates that the snowmobile may have been going about 49 mph at some point during the collision. Officer Monnich, an employee of the Michigan Department of Natural Resources, spoke with defendant after the accident and reported that defendant seemed "pretty mellow" for a guy who had just been in an accident, but noted nothing else out of the ordinary about defendant.

After the preliminary examination, defendant was bound over to the circuit court on both charges. Defendant moved to dismiss with respect to Count 2 (operating while intoxicated) arguing that there was insufficient evidence to show he was under the influence. The trial court denied defendant's motion and this appeal followed. Defendant argues on appeal that the district court abused its discretion when it found probable cause to believe defendant was driving while under the influence and bound defendant over on Count 2. We agree.

The standard of review for a ruling on a motion to dismiss is abuse of discretion. *People v Scott*, 324 Mich App 459, 462; 924 NW2d 252 (2018). An abuse of discretion occurs when the trial court's "decision falls outside the range of principled outcomes." *Id*. (quotation marks and citations omitted). "Absent an abuse of discretion, a reviewing court should not disturb the district court's bindover decision." *People v Seewald*, 499 Mich 111, 116; 879 NW2d 237 (2016). The appellate court reviews "de novo the bindover decision to determine whether the district court abused its discretion, giving no deference to the circuit court's decision." *People v Norwood*, 303 Mich App 466, 468; 843 NW2d 775 (2013) (quotation marks and citation omitted).

"At a preliminary examination, the prosecution must present evidence establishing that the defendant committed the charged offense, and the district court must find that probable cause exists to bind over a defendant for trial." *People v Fairey*, 325 Mich App 645, 648-649; 928 NW2d 705 (2018). "To satisfy this burden, the prosecution must present evidence of each and every element of the charged offense, or enough evidence from which an element may be inferred." *Id*. at 649. "Probable cause is established if the evidence would persuade a careful and reasonable person to believe in the defendant's guilt." *Id*. Circumstantial evidence alone may be sufficient, "but must nevertheless demonstrate reasonable grounds to suspect the defendant's personal guilt." *Id*.

One may not operate a snowmobile while "under the influence of . . . a controlled substance . . . ." MCL 324.82127(1)(a). "Under the influence" means more than having a specified amount of marijuana in a person's system; there must be an "effect on the person." *People v Koon*, 494 Mich 1, 6; 832 NW2d 724 (2013).[2] See also *People v Lambert*, 395 Mich

---

[2] The Supreme Court clarified that "under the influence" is a "term of art used in other provisions of the Michigan Vehicle Code." *Koon*, 494 Mich at 6 n 14; see, e.g., MCL 257.625(1)(a) (stating that a person is "operating while intoxicated" if he or she is "under the influence of . . . a controlled substance . . ."). Therefore, though *Koon* was defining what it meant to be "under the influence" for purposes of the Michigan Medical Marihuana Act, MCL 333.26424 *et seq*., this definition seems to be applicable to other sections of the Michigan Compiled Laws using this "term of art."

296, 305; 235 NW2d 338 (1975) (holding that the driver's ability to drive must have been "substantially and materially affected" by the intoxicating liquor); *Black's Law Dictionary* (11th ed) (defining "under the influence" as "deprived of clearness of mind and self-control because of drugs or alcohol"). "A person may be considered under the influence of marijuana if it can be shown that consumption of marijuana had some effect on the person, such that it weakened or reduced the [person's] ability to drive such that the [person] drove with less ability than would an ordinary, careful, and prudent driver." *People v Dupre*, 335 Mich App 126, 140; 966 NW2d 200 (2020) (quotation marks and citations omitted; alteration in original). If a person's ability to operate a motor vehicle normally is substantially lessened, that is proof of being under the influence. In an OWI case involving alcohol, this Court noted that "[u]nder the influence effectively means that the defendant was substantially deprived of normal control or clarity of mind." *Bloomfield Twp v Kane*, 302 Mich App 170, 185 n 10; 839 NW2d 505 (2013) (quotation marks and citation omitted).[3]

The record does not indicate that defendant's behavior was "affected" by the Tetrahydrocannabinol (THC) in his system. Officer Monnich testified that defendant seemed "pretty mellow" for a guy who had just gotten into an accident but noted nothing else that stood out about his interaction with defendant on the night of the accident. Additionally, when asked to get a blood draw, defendant consented. The lab work showed that defendant had 8 nanograms per milliliter (ng/ml) of THC in his system. Officer Monnich had a long conversation with defendant, and apart from seeming "mellow," there was nothing that Officer Monnich could point to that indicates defendant was affected by marijuana. See *Koon*, 494 Mich at 6 (holding that "under the influence" means a person was affected by the controlled substance). Nor did Officer Monnich opine that defendant was in any way deprived of clearness of mind or self-control.

Turning to defendant's ability to operate the snowmobile, the prosecution has presented the lab report and other circumstantial evidence of defendant's driving to show he was under the influence. With regard to the lab report, the mere presence of an intoxicating substance in a person's system does not prove that the person was under the influence of that substance while operating a motor vehicle. See *id.* (holding that a person must actually be affected by the marijuana, not merely have it present in their system). The prosecution has presented no evidence indicating that 8 ng/ml of THC is enough to render a person under the influence, nor that this amount of THC has an effect on a person's ability to operate a motor vehicle. See *Dupre*, 335 Mich App at 140 (holding that the prosecution must show that the driver had a weakened or lessened ability to drive to be considered under the influence). Without anything more than a mere number of 8 ng/ml of THC in defendant's system, the only finding that this evidence can support

---

[3] The Michigan Criminal Jury Instructions state that "under the influence of a controlled substance" means that because of using or consuming a controlled substance, the defendant's ability to operate a motor vehicle in a normal manner was substantially lessened. M Crim JI 15.2a. Mere consumption of a controlled substance is not enough to prove someone is intoxicated. M Crim JI 15.2a(4). The test is whether, because of consuming a controlled substance, the person's "ability to operate a motor vehicle in a normal manner was substantially lessened." M Crim JI 15.2a(4). The person's ability must be so affected that they can no longer operate a vehicle in a "normal manner." M Crim JI 15.2a(4).

is that if defendant was under the influence, it might have been because of THC. But the evidence of THC in defendant's system, standing alone, does not prove that defendant was unable to operate the snowmobile in a normal manner, and there is no objective evidence from the night of the crash that defendant was in fact under the influence.

The circumstances surrounding the accident do not indicate that defendant was unable to operate a snowmobile in a normal manner. That defendant may have been driving recklessly is not contested. But that defendant was under the influence is seemingly unsupported by the record. The record shows that on the dark night of February 13, 2021, defendant may have been traveling across Devils Lake at anywhere from 49 to 70 mph during an ice fishing festival where roughly 20 to 50 shanties and lots of people were gathered. During his drive, defendant looked down and then back up only to see decedent's shanty just before colliding with it. The evidence indicated that defendant was traveling at a high speed and did not brake hard before colliding with the shanty. Driving at a high rate of speed, on a dark night, across a lake where many people had gathered for a festival provided probable cause that defendant was driving recklessly. But driving recklessly does not equate to driving under the influence of a controlled substance.

To begin with, there is no evidence that decedent's shanty was clearly visible or would have been seen by a sober driver. Rather, the evidence shows that the shanty was black and blue, it was a pitch-black night, and if there was anything reflective on the shanty it was very small and possibly not even facing defendant's direction. That defendant looked down shortly before hitting the shanty also does not indicate he was under the influence, as drivers often glance down while driving to make necessary observations like speed, fuel levels, light checks, etc. Looking down is neither uncommon nor indicative of intoxication. Aside from the blood test, the prosecution presented no evidence that defendant was unable to operate his snowmobile in a normal manner. The trial court's conclusion that "no person with a clear mind or self-control would act in such a manner" is unpersuasive as people do reckless things every day, often with tragic consequences. That defendant may have acted recklessly, and that a fatal crash occurred, does not establish that he was under the influence. Concluding otherwise, as the district court did, fell outside the range of principled outcomes.

At the conclusion of the preliminary examination, the prosecution argued that there was sufficient evidence to support the bindover of both counts 1 and 2, but asked the trial court to consider the lesser charge of operating while visibly impaired (OWVI) if the court found insufficient evidence to support operating while intoxicated (OWI). With respect to the parties' arguments on appeal concerning OWVI, there was insufficient evidence to support a bindover on this lesser offense.

The Legislature created OWVI to "address those situations in which a defendant's level of intoxication and resulting impairment does not suffice to establish OWI, yet the defendant still presents a danger to the public because his or her ability to operate the vehicle is visibly impaired." *People v Perry*, 338 Mich App 363, 377; 980 NW2d 92 (2021). This Court, in *People v Mikulen*, 324 Mich App 14, 24; 919 NW2d 454 (2018), held that OWVI requires "proof that a person's ability to operate a motor vehicle was visibly impaired, MCL 257.625(3)," meaning a prosecutor must "present evidence describing or depicting actions, conduct, characteristics, or movements of the person during the pertinent time period, revealing an impaired ability to operate a vehicle." If there is no evidence of this, the prosecution can attempt to prove the defendant was impaired by

showing the defendant showed behavioral signs of being impaired, i.e., stumbling, speaking incoherently, etc. *Id*. The best evidence that someone was driving while impaired would be evidence showing the person was swerving or moving the vehicle in an improper fashion. *Id*. at 24-25.[4]

The record in this case does not support a finding that defendant was visibly impaired. As discussed above, even driving recklessly does not show that defendant was impaired. Furthermore, there was no evidence suggesting that defendant's behavior indicated that he was impaired. After speaking with defendant, Officer Monnich was unable to provide any observations that would indicate defendant may have been impaired. Officer Monnich's only observation was that defendant seemed "pretty mellow," though Officer Monnich had a full conversation with defendant. Ultimately, it is mere speculation to assume that the presence of THC, without any evidence of impairment, caused defendant to be impaired while driving. Therefore, there is also not probable cause to believe defendant is guilty of OWVI.

The trial court's denial of defendant's motion to dismiss, as well as the district court's bind over on Count 2, are reversed and the case is remanded for further proceedings. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael F. Gadola

---

[4] This case concerned an automobile, but its reasoning is being applied to the present case by analogy.