*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* McDAID, Minors.

UNPUBLISHED
September 21, 2023

No. 364341
St. Joseph Circuit Court
Family Division
LC No. 2022-000950-NA

Before: SWARTZLE, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order removing the minor children, HM and ZM, from respondent's care and custody. We reverse the portion of the trial court's order that removed the children and remand for further proceedings.

On December 15, 2022, the Department of Health and Human Services (DHHS) petitioned the trial court to take jurisdiction over HM and ZM under MCL 712A.2(b)(1) due to medical neglect.[1] The petition also requested that the court issue an order removing the children from respondent's home.

In support of its petition, the DHHS described how concerns about respondent's ability to meet ZM's medical needs began immediately after ZM was born. The petition alleged that ZM remained hospitalized at Three Rivers Hospital for two weeks after his birth because of feeding issues. According to staff at Three Rivers, respondent did not consistently visit ZM during that time, despite the staff's insistence that she remain to bond with her child and learn to care for his medical needs. Three Rivers' staff also reported that when respondent visited ZM, she did not feed ZM unless asked, slept through his crying, would send ZM to the hospital's nursery to be fed, and failed to set alarms during the night to wake ZM up to feed, leaving hospital staff to meet

---

[1] In its petition, the DHHS marked a box indicating that the DHHS was asking the trial court to take jurisdiction under MCL 712A.2(b)(2), but this appears to be a clerical error. In documents attached to the standard petition form, the DHHS stated that it was asking the trial court to take jurisdiction under MCL 712A.2(b)(1), and the allegations in the petition are more appropriate under that subsection.

ZM's needs during the night. The staff further reported that, even when respondent did feed ZM, she would do so improperly, then place ZM back in his crib and go to sleep without alerting staff.

The petition alleged that ZM was eventually discharged with respondent on or around November 20, 2022, but had to be airlifted to a Bronson Children's Hospital on November 24, 2022, due to a urinary tract infection that turned septic. According to the petition, ZM has had to remain at Bronson since then because he was diagnosed with hyperinsulinism. The petition alleged that, like staff at Three Rivers, staff at Bronson reported that respondent infrequently visited ZM (including not visiting ZM for an entire week), despite staff's insistence that respondent be at the hospital to learn how to care for ZM. The staff further reported that when respondent did visit ZM, she seemed uninterested in ZM, slept through most of the visits, and again had to be prompted to feed ZM. The staff also reported that respondent still failed to set alarms to feed ZM in the night, again leaving hospital staff to care for him.

With respect to HM, the petition only alleged that she had to be dismissed from family care services in June 2022 "due to no call no shows," and that a referral for HM to Early On was closed "due to not being able to make contact with" respondent.

At the preliminary hearing, the DHHS worker reiterated the allegations from the petition. The worker elaborated that, after ZM was originally discharged, he was seen by his regular pediatrician, who noted concerns about his weight and his lack of bond with respondent. The worker also went into more detail about ZM's current medical condition, explaining that, due to his hyperinsulinism, "he has a feeding tube in his mouth and he needs medication to keep him [sic] blood sugar stabilized." The worker added that staff at Bronson told her "that if [ZM] were to be [dis]charged to [respondent] at that time she would not have the skills to be able to take care of him."

The worker also explained the DHHS's concerns for HM. The worker said HM's pediatrician told her that HM had "a slight motor delay" that they were attempting to address through services, but HM had to be dismissed for "too many no-call/no-shows" and "because they couldn't get a hold [sic] of" respondent.

The worker also expressed some concerns about respondent's living situation. The worker said that respondent lived in a manufactured home with her two children, boyfriend, mother, and stepfather. Other than the number of people in the home, however, the worker believed that the living conditions were appropriate. Apart from the living conditions, the worker said that the DHHS had concerns because respondent's mother and stepfather both had CPS histories.

On cross-examination, the DHHS worker reported that respondent spoke with social services at the hospital, but the worker did not know if social services offered respondent services. The DHHS worker further reported that she did not identify any services that could aid respondent with the 24-hour care that ZM required, which was one of the DHHS's main concerns. The worker also said that the DHHS did not offer respondent transportation assistance, despite knowing that respondent had to rely on her boyfriend and stepfather for transportation to the hospital.

The trial court determined that there was probable cause to authorize the petition against respondent and to order removal of ZM and HM, explaining:

This is a very tough case, very tough case mom. Very unique and very special circumstances with your—at least your youngest son. It is as both attorneys have said, it is a lower standard, a probable cause standard. As to whether it meets the preponderance of evidence when we go to trial that's yet to be seen, that's when all the evidence would really come out. It's very difficult for a very young child and a young parent, especially one that's got some pretty serious medical needs, and strenuous feeding times and tubes and stuff like that. So, as to probable cause it does meet I think at this time and I do find that probable cause would be sufficient at this time and to reasonable efforts to going above and beyond, going to all the hospitals, going to her prior doctors for [HM] and getting those reports and getting that stuff. This is definitely enough reasonable efforts were made. I do find that contrary to the welfare for [sic] to be returned to mother at this time, but I think it's not something that we can work with, we can get things going and hopefully with the services things can go very rapidly and fixed and get the things that you need prepared, because I think you need to get prepared and I know you're young and I know you can do it and I think this Court and everyone here wants the best for this child, wants reunification, wants the family together. Okay?

So, I will find that removal at this time would be appropriate at least by a probable cause[.]

The trial court subsequently entered an order in which it checked a box indicating that there was probable cause to believe that one or more of the allegations in the petition were true. The court also checked a different box indicating that it was necessary to order the removal of ZM and HM from respondent's custody. The form stated that if this box is checked, "contrary to the welfare and reasonable efforts findings must be made." In accordance with the form's requirement, the trial court also checked a box stating, "It is contrary to the welfare of the child(ren) to remain in the home because," and underneath this statement, the trial court wrote, "Lack of efforts for [respondent] to bond with and care for [ZM]." In accordance with the form's requirement that the trial court address reasonable efforts, the trial court checked a box indicating, "Consistent with the circumstances, reasonable efforts were made to prevent removal of the child(ren) from the home," and the court specific that those efforts included, "Social Work Services, Conversations with [respondent] about the importance of learning how to properly care for [ZM], visits to hospitals and [doctors] offices."

Now, on appeal, respondent argues that the trial court failed to make the required factual findings necessary to order the removal of HM and ZM under MCL 712A.13a(9) and MCR 3.965(C)(2). We agree.

This Court reviews the interpretation and application of statutes and court rules de novo. *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014). This Court reviews a trial court's factual findings for clear error. *In re Williams*, 333 Mich App 172, 178; 958 NW2d 629 (2020). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted).

MCL 712A.13a(9) and MCR 3.965(C)(2) permit a court to order children under the court's jurisdiction to be placed into foster care if the court finds certain conditions are satisfied. The statute and the court rule codify the same five conditions that must be found to justify removal:

> The court may order placement of the child in foster care if the court finds all of the following conditions:
>
> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
>
> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).
>
> (c) Continuing the child's residence in the home is contrary to the child's welfare.
>
> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.
>
> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCL 712A.13a(9). See also MCR 3.965(C)(2).]

While a court is "not obligated to articulate extensive findings regarding every conceivable detail," it "must make a record of its findings as to each and every factor sufficient for this Court to conduct a meaningful review." *In re Williams*, 333 Mich App at 183.

At the outset, we stress that best practice for trial courts when making removal decisions is to specifically address the five required findings under MCL 712A.13a(9) and MCR 3.965(C)(2) and articulate the basis for each finding on the record. Here, the trial court's oral opinion and ensuing order appear perfunctory, which is not only highly inappropriate given the seriousness of ordering removal of a child from a parent's custody, but it stifles this Court's ability to review the merits of the trial court's decision. The requirement that a trial court make a record of its findings for every factor stems in no small part from the simple fact that this is an error-correcting Court, not a fact-finding court. See *Apex Labs Int'l Inc v City of Detroit*, 331 Mich App 1, 10; 951 NW2d 45 (2020); *Bloomfield Twp v Kane*, 302 Mich App 170, 185; 839 NW2d 505 (2013). That role belongs to the trial courts. See *Brown v Rudy*, 324 Mich App 277; 922 NW2d 915, 929 (2018) (BECKERING, J., concurring in part). The importance of these distinct roles is particularly salient in a case like this where this Court is tasked with reviewing the trial court's factual findings; if there are no factual findings to review, then that itself is an error that must be corrected. See, e.g., *In re Williams*, 333 Mich App at 184-185.

With that preface, it should come as little surprise that we conclude that the trial court failed to make the factual findings required by MCL 712A.13a(9) and MCR 3.965(C)(2) prior to removal. We will not belabor the point, however. Most problematically, the trial court failed to make *any* factual findings with respect to MCL 712A.13a(9)(b) and (e). For MCL 712A.13a(9)(b), the trial court was required to address whether there was any "service or other arrangement except

removal of the child" that was "reasonably available" and could "adequately safeguard the child" if left in respondent's care. The trial court said nothing in its oral opinion that could be reasonably construed as addressing this factor. In its written order, the trial court checked a box on a form indicating that "no remedy other than protective custody is reasonably available to protect the child(ren)," but this statement, without more, is plainly inadequate. See *In re Williams*, 333 Mich App at 183 (explaining that "when a statute or court rule requires factual findings as to an enumerated list of factors, the trial court must make a record of its findings as to each and every factor sufficient for this Court to conduct a meaningful review"). For MCL 712A.13a(9)(e), the trial court was required to address whether "[c]onditions of child custody away from [respondent were] adequate to safeguard the child's health and welfare." Nothing in either the trial court's oral argument or written order reflect that the trial court made any findings related to this factor, leaving this Court with nothing to review.[2]

In *In re Williams*, 333 Mich App at 185, this Court held that when a trial court "ignore[s] the mandates in MCR 3.965(C)(2) and MCL 712A.13a(9)," the proper remedy is to reverse the removal order, and, "If, after remand, any party again seeks removal of [the children], the trial court must make findings on the record as to all the factors enumerated in MCR 3.965(C)(2) and MCL 712A.13a(9)."[3] Accordingly, we reverse the trial court's removal order, remand for further proceedings, and, if a party again seeks removal, direct the trial court to make findings on the record with respect to all of the factors in MCR 3.965(C)(2) and MCL 712A.13a(9).[4]

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien

---

[2] We also note that, to the extent that the trial court addressed MCL 712A.13a(9)(a) and (c), the trial court made no mention of HM, focusing instead on concerns related exclusively to ZM.

[3] *In re Williams*, 333 Mich App at 185, also directs that such a determination should be made using up-to-date information.

[4] Given our holding reversing the trial court's removal order, we need not address respondent's argument that there was insufficient evidence to support any of the factors listed in MCR 3.965(C)(2) and MCL 712A.13a(9).