*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLICATION
November 21, 2025
8:38 AM

Plaintiff-Appellee,

v

No. 372611
Kent Circuit Court
LC No. 24-002381-FH

CHARLIE JOHN MCKAY,

Defendant-Appellant.

Before: RICK, P.J., and MALDONADO and KOROBKIN, JJ.

PER CURIAM.

In this interlocutory appeal, defendant appeals by delayed leave granted[1] the circuit court's order denying his motion to quash his bindover on a charge of operating a vehicle while intoxicated causing death, MCL 257.625(4)(a). We affirm.

## I. BACKGROUND

The testimony and evidence obtained from defendant's preliminary examination are as follows. In September 2023, defendant was working at a restaurant. After his shift, he and a coworker went to the restaurant's bar where his coworker observed defendant drink at least three 14-ounce beers. The restaurant's manager authenticated a receipt indicating that defendant had purchased a total of four beers that evening between approximately 5:00 p.m. and 8:00 p.m. The coworker did not observe defendant smoke any marijuana at that time or during the day, although the coworker was not working in defendant's vicinity all day.

At approximately 8:00 p.m., law enforcement was dispatched to a curved section of a road 5 to 10 minutes away from the restaurant. It was dark, and that portion of the road was not lit. When law enforcement arrived, they observed the aftermath of a two-car collision: defendant was

---

[1] *People v McKay*, unpublished order of the Court of Appeals, entered February 27, 2025 (Docket No. 372611).

in his vehicle appearing uninjured, and the victim was in a heavily damaged vehicle. The victim later died from injuries sustained in the collision. The victim's blood alcohol level was 0.20%.

Deputy Caitlin Carey of the Kent County Sheriff's Department (KCSD) made brief initial contact with defendant while he was in his vehicle to ask if he was all right. She did not notice any signs of intoxication at that time. However, when she made a second contact with defendant that was face-to-face, she "could smell a strong odor of intoxicants coming from his person." Deputy Michael Stahl of the KCSD also interacted with defendant; Deputy Stahl noted that defendant smelled of onions, not alcohol. Neither deputy observed any other symptoms of intoxication, such as slurred speech, limited dexterity, or poor motor skills. However, defendant refused to complete a field sobriety test, and he exhibited some alleged confusion in response to one of Deputy Carey's instructions about a breath test. Defendant later agreed to go to the hospital to have his blood tested. At approximately 11:30 p.m., defendant's blood was drawn, processed, and secured. His blood alcohol level was 0.051%. He also was tested for THC,[2] the results of which yielded 2.3 nanograms per milliliter.

Two crash-reconstruction experts went to the scene several days later where they observed gouge marks that indicated the location and nature of the initial impact between the vehicles. In both of their expert opinions, the collision occurred because defendant crossed the double-yellow center line. When one expert was asked at the preliminary examination whether the victim's blood alcohol level had any impact on the expert's assessment of how the collision occurred, the expert testified that the victim's blood alcohol level had no impact whatsoever. However, the experts acknowledged that defendant could have crossed the center line in efforts to avoid the victim driving into the wrong lane.

In February 2024, the prosecution brought a charge of operating a motor vehicle while intoxicated causing a death, MCL 257.625(4)(a), against defendant. After hearing the testimony and observing the evidence, the district court made the following findings, in pertinent part:

> The next [consideration] is whether or not the state of intoxication significantly and materially affected the Defendant's ability to control the motor vehicle either by consumption of alcohol or consumption of a controlled substance or a combination of both. In this instance, we have a combination of both.

> The next test that the Court must look at is was there a significant superseding independent cause for this accident. Specifically, I'm referring to the blood alcohol content of [the victim]. He was, clearly, almost three times the legal limit as he was proceeding down the highway. Therefore, does the degree of intoxication of the Victim, [], enter into this calculation. I don't remember, but I do recall the testimony, and I can't tell you who authored that testimony said that in fact in his opinion that there was absolutely no way anyone, including [the

---

[2] "Tetrahydrocannabinol, or THC, is the physiologically active component of marijuana. See *Stedman's Medical Dictionary* (26th ed), p 1791." *People v Koon*, 494 Mich 1, 3 n 3; 832 NW2d 724 (2013).

victim], could have avoided this collision. So whether or not the Defendant['s] state of intoxication caused this accident, or was the proximate cause of the accident, and whether or not the Victim's .20 percent by weight of alcohol in his blood significantly affected or wasn't introducing cause of the accident is left to a trier of fact, not this Court.

Therefore, this Court will bind him over on the one count of operating while intoxicated causing death.

In March 2024, defendant moved to quash the bindover, arguing that the prosecution failed to provide sufficient evidence that defendant was under the influence of intoxicating substances during the collision. After a brief hearing on the motion, the circuit court denied defendant's motion because there was evidence that both supported and negated defendant's intoxication such that the district court properly bound over defendant for a jury to make the determination. This appeal followed.

## II. ANALYSIS

Defendant argues that there was insufficient evidence of probable cause that he was intoxicated to bind him over for trial. We disagree.

"In the context of reviewing a district court's bindover decision, the order on appeal is the *circuit* court's decision denying the motion to quash, which we review de novo (i.e., with no deference) because the dispositive question is whether the *district* court abused its discretion in binding over defendants." *People v Crumbley*, 346 Mich App 144, 166; 11 NW3d 576 (2023) (emphasis added). Accordingly, we review the *district* court's bindover decision for an abuse of discretion, which "occurs when a decision falls outside the range of reasonable and principled outcomes, and a trial court necessarily abuses its discretion when it makes an error of law." *Id*. at 167 (quotation marks and citations omitted).

In general terms, "the purpose of a preliminary examination is to determine whether a crime was committed and whether there is probable cause to believe that the defendant committed it." *Id*. (quotation marks, citations, and brackets omitted). "In order to bind a defendant over for trial in the circuit court, the district court must find probable cause that the defendant committed a felony based on there being evidence of each element of the crime charged or evidence from which the elements may be inferred." *People v Simon*, 339 Mich App 568, 580; 984 NW2d 800 (2021) (quotation marks and citations omitted). To establish probable cause, the prosecution must present sufficient evidence for each element of the charged offense such that "a person of ordinary caution and prudence [would] conscientiously entertain a reasonable belief of defendant's guilt." *Crumbley*, 346 Mich App at 167-168 (quotation marks and citation omitted). "Although a district court may . . . rely on inferences to establish probable cause for a bindover, a person or ordinary prudence and caution may not infer a fact absent any actual evidence to support the inference of that fact because mere suspicion is not the same as probable cause . . . ." *Simon*, 339 Mich App at 585 (quotation marks, citation, and brackets omitted; ellipses in original). That said, "[i]f the evidence conflicts or raises a reasonable doubt, the defendant should be bound over for resolution of the issue by the trier of fact." *People v Selwa*, 214 Mich App 451, 457; 543 NW2d 321 (1995).

-3-

To establish that a defendant violated MCL 257.625, the prosecution must provide evidence for each of the following elements: "First, that the defendant operated a motor vehicle. . . . Second, that the defendant operated the vehicle on a highway or other place open to the public or generally accessible to motor vehicles . . . . Third, that defendant was intoxicated." M Crim JI 15.2(2)-(4). "Under the influence" means that the consumption of intoxicating substances impacted the defendant such that "the defendant's ability to operate a motor vehicle in a normal manner was substantially lessened." M Crim JI 15.2.

In the present case, defendant challenges only that he was under the influence of intoxicating substances. "To prove a person was 'under the influence' of alcoholic liquor, a controlled substance, or other intoxicating substance, the prosecution must prove that defendant's ability to drive was substantially and materially affected by consumption of the relevant substance." *People v Bowden*, 344 Mich App 171, 188; 999 NW2d 80 (2022) (quotation marks and citation omitted). Merely having a measurable amount of marijuana in one's system does not automatically constitute being "under the influence" of marijuana while operating a motor vehicle. *People v Koon*, 494 Mich 1, 6; 832 NW2d 724 (2013). A person may be considered under the influence of marijuana "if it can be shown that consumption of marijuana had some effect on the person, such that it weakened or reduced the [person's] ability to drive such that the [person] drove with less ability than would an ordinary, careful, and prudent driver." *People v Dupre*, 335 Mich App 126, 140; 966 NW2d 200 (2020) (quotation marks and citations omitted; alteration in original). Similarly, to be " '[u]nder the influence' effectively means that the defendant was substantially deprived of normal control or clarity of mind." *Bloomfield Twp v Kane*, 302 Mich App 170, 185 n 10; 839 NW2d 505 (2013) (quotation marks and citation omitted).

"[A] driver's [blood alcohol level] is presumed to be the same at the time of testing as it was at the time the driver operated the vehicle." *People v Urbanski*, 348 Mich App 90, 94; 17 NW3d 430 (2023), citing MCL 257.625a. Evidence of intoxication that impaired a driver's ability to operate a vehicle includes evidence of "visible impairment," such as swerving, driving erratically, "failing a sobriety test," stumbling, speaking with a slur, or confusion. *People v Mikulen*, 324 Mich App 14, 24-25; 919 NW2d 454 (2018). Additionally, evidence that a defendant lied can support a jury's inference of a consciousness of guilt. *People v Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008).

In the present case, the record evidence in support of finding that defendant was intoxicated was as follows: the coworker's testimony; the bar tab receipts; the manager's authentication of the receipts establishing that defendant consumed at least three 14-ounce beers between 5:00 p.m. and 8:00 p.m. before the collision; law enforcement being dispatched to respond to a collision at approximately 8:00 p.m., which was an estimated 5 to 10 minutes away from the restaurant; Deputy Carey smelling alcohol on defendant when she interacted with him more closely after he exited his vehicle; defendant lying about consuming alcohol that evening; defendant's blood alcohol level and THC content results indicating that he had alcohol and THC in his system at the time of the collision; the crash-reconstruction experts opining that the collision occurred by defendant's vehicle crossing the center line; and a deputy's expert testimony opining that the victim's blood alcohol level had no impact on how the collision unfolded. See, e.g., *Unger*, 278 Mich App at 227. This evidence appears greater than "mere speculation" such that "a person of ordinary prudence and caution" could infer probable cause that defendant was intoxicated, which caused him to cross the center line. See *Simon*, 339 Mich App at 585.

In contrast, the following evidence challenges the assertion that defendant was intoxicated: the deputies who interacted with defendant observed no signs of intoxication; defendant's coworker testified that defendant did not appear intoxicated when the coworker left the restaurant bar; defendant's coworker did not observe defendant smoke marijuana that evening, and marijuana can remain in one's system for a long duration after initial ingestion; defendant's blood alcohol level was below the 0.08% legal threshold for per se driving while intoxicated; and the crash-reconstruction experts acknowledged that the collision could have occurred by the victim crossing the center line and defendant swerving to avoid the victim. See, e.g., *Koon*, 494 Mich at 6; *Mikulen*, 324 Mich App 14, 24-25.

This competing evidence establishes a conflict that "raises a reasonable doubt" such that the district court properly bound over defendant "for resolution of the issue by the trier of fact." *Selwa*, 214 Mich App at 457. See also *People v Hudson*, 241 Mich App 268, 278; 615 NW2d 784 (2000). Given that the threshold for a district court abusing its discretion is limited to errors of law or a decision that falls "outside the range of reasonable and principled outcomes," the district court's decision to bind over defendant for trial on this substantial, though conflicting, evidence about whether defendant was under the influence during the collision was not an abuse of discretion. *Crumbley*, 346 Mich App at 167 (quotation marks and citation omitted).

Affirmed.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin